IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KYLE ENDICOTT, as Special Administrator for the Estate of Jennifer Crowell,<br><br>        Plaintiff,<br><br>v.<br><br>CHOCTAW COUNTY CITY OF HUGO HOSPITAL AUTHORITY, et al.,<br><br>        Defendants. | Case No. CIV-21-319-RAW |

# ORDER

      Before the court is the motion of defendant Choctaw County City of Hugo Hospital Authority for summary judgment. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim. *Sanderson v. Wyoming Highway Patrol,* 976 F.3d 1164, 1173 (10th Cir.2020). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wright v. Experian Info. Sols., Inc.,* 805 F.3d 1232, 1239 (10th Cir.2015).

      On June 26, 2020, Jennifer Crowell was observed (possibly in seizure) on a street in Hugo, Oklahoma. She was transported by ambulance to Choctaw Memorial Hospital, where she was seen by defendants Dr. Hogan and Bullard, a nurse at the facility. The initial records

used the following language to describe Crowell: "'suicidal thoughts (acutely psychotic),' anxiety, hallucinations, delusions, 'bizarre behavior,' agitated, 'aggressive behavior,' and 'violent behavior.'"  As medical evaluation and treatment was attempted, Crowell hit Bullard.  The police were called and Crowell was transported to jail.  Crowell's condition did not improve and jailers observed her banging her head on the cell.  Crowell was returned to Choctaw Memorial Hospital and later sent to Alliance Hospital in Durant, where she died on June 30, 2020.

In the original petition filed in state court (#2-2), movant is named in the first claim (negligence under state law), the second claim (EMTALA), and fourth claim (municipal liability under 42 U.S.C. §1983)

As to the first claim, movant asserts that it may not be liable for the discretionary decision of Nurse Bullard to contact the police regarding Crowell's violent, aggressive, and abusive behavior, citing 51 O.S. §155(5).  Plaintiff has not substantively responded on this point.  The motion will be granted.

The fourth claim will be dismissed, although not on a ground expressly raised by movant. "To state a valid §1983 claim, the plaintiff must allege that: (1) she suffered a violation of her constitutional rights; and (2) this deprivation was caused by someone acting under the color of state law.  But [plaintiff] is unable to prevail on her §1983 claim because medical malpractice, without more, is not a constitutional violation but is instead a state law claim." *Adkins v. Koduri,* 755 Fed.Appx. 751, 753 (10th Cir.2018).[1]

---

[1] Unlike the Constitution, Section 1983 is not itself a source of substantive rights, but serves instead only as a vehicle to provide relief against those who, acting under color of state law, violate federal rights

As to the second claim, EMTALA (the Emergency Medical Treatment and Active Labor Act), 42 U.S.C. §1395dd, was enacted to prevent hospitals from "dumping" patients that they could treat but who could not pay for services. *Ingram v. Muskogee Reg. Med. Ctr.,* 235 F.3d 550, 551 (10th Cir.2000). Hospitals have two primary obligations under EMTALA. "First, the hospital must conduct an initial medical examination to determine whether the patient is suffering from an emergency medical condition." *Phillips v. Hillcrest Med. Ctr.,* 244 F.3d 790, 796 (10th Cir.2001). Second, if an emergency medical condition exists, the hospital must "stabilize the patient before transporting him or her elsewhere." *Id.*

As to screening, EMTALA provides no remedy for claims that a hospital's screening procedures was inadequate, so long as "its standard screening procedure is applied uniformly" to all similarly situated patients. *Repp v. Anadarko Mut. Hosp.,* 43 F.3d 519, 522 (10th Cir.1994). Plaintiff appears to accept movant's statement that "it fully complied with all hospital policies in relation to [Crowell's] encounter on June 26, 2020." (#122 at 2). The court finds any screening claim fails.[2]

To state an EMTALA failure to stabilize claim, a plaintiff must show (1) the patient had an emergency medical condition[3]; (2) the hospital had actual knowledge of that condition; (3) that patient was not stabilized before transfer; and (4) prior to transfer of the unstable patient, the transferring hospital did not obtain proper consent or follow appropriate certification procedures.

---

created elsewhere. *Sturdivant v. Fine,* 22 F.4th 930, 935 (10th Cir.2022).

[2]The EMTALA medical screening requirement is set forth in 42 U.S.C. §1395dd(a): "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department." An "appropriate medical screening examination" requires that the hospital "apply uniform screening procedures to all individuals coming into the emergency room." *Phillips,* 244 F.3d at 797.

[3]Defined in 42 U.S.C. §1395dd(e)(1)(A).

3

*Martinez v. LEA Reg. Hosp.,* 2022 WL 17584023, *8 (D.N.M.2022)(citing *Baber v. Hospital Corp. of America,* 977 F.2d 872, 883 (4th Cir.1992)).

Viewing the record in the light most favorable to plaintiff, the court finds these elements are satisfied for the purpose of resisting summary judgment. A mental health emergency with risk of suicide can qualify as an emergency health condition. *Id.* (citing *Moses v. Providence Hosp. And Med. Ctrs., Inc.,* 561 F.3d 573, 585 (6th Cir.2009)). *See also Jones v. Beth Israel Hosp.,* 2018 WL 1779344, *8 (S.D.N.Y.2018)(for the mental health point, and that transfer to jail rather than another hospital may trigger EMTALA). The medical notes clearly indicate the hospital staff's knowledge of Crowell's condition.

Stabilization is defined as "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." 42 U.S.C. §1395dd(e)(3)(A). Viewed in the light most favorable to plaintiff, the transfer of a mental health emergency from a hospital to a jail does not meet this definition, and subsequent events bear that out.

Finally, movant argues that it is entitled to summary judgment because recovery against it is barred by the GTCA. The court disagrees. EMTALA limits <u>damages</u> to those available for personal injury under state law. *See* 42 U.S.C. §1395dd(d)(2)(A). The federal statute, however, preempts state sovereign immunity. *See Root v. New Liberty Hosp. Dist.,* 209 F.3d 1068, 1070 (8th Cir.2000).

It is the order of the court that the motion for summary judgment of defendant Hospital Authority (#113) is hereby granted in part and denied in part. Plaintiff's state law negligence claim and Section 1983 claim are dismissed as to movant. Plaintiff's EMTALA claim as to movant remains pending.

**ORDERED THIS 28th  DAY OF SEPTEMBER, 2023.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**