IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KYLE ENDICOTT, as Special Administrator for the Estate of Jennifer Crowell,** ) ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. CIV-21-319-RAW |
| **CHOCTAW COUNTY CITY OF HUGO HOSPITAL AUTHORITY, et al.,** ) ) ) ) | |
| **Defendants.** ) | |

## ORDER

Before the court is the motion of plaintiff for relief from order or judgment. In a previous order (#167) the granted the motion for summary judgment of defendant Velvet Bullard. Plaintiff now asks the court to reconsider that decision.

On June 26, 2020, Jennifer Crowell was observed (possibly in seizure) on a street in Hugo, Oklahoma. She was transported by ambulance to Choctaw Memorial Hospital, where she was seen by Bullard, a nurse at the facility. The initial records used the following language to describe Crowell: "'suicidal thoughts (acutely psychotic),' anxiety, hallucinations, delusions, 'bizarre behavior,' agitated, 'aggressive behavior,' and 'violent behavior.'" When Crowell was initially uncooperative, the police were called due to a "combative patient."

Crowell approached one officer with her fist raised as if to strike him. Crowell was

placed in handcuffs. Medicine was administered in an attempt to calm Crowell. One hand restraint was removed so Bullard could eat. As medical evaluation and treatment were attempted, Crowell hit Bullard. The police were called again (the two officers having left as their shift was over) and Crowell was transported to jail. Crowell was returned to Choctaw Memorial Hospital and later sent to Alliance Hospital in Durant, where she died on June 30, 2020.

In the original petition filed in state court (#2-2), Bullard is named in the first claim (negligence under state law) and the third claim (deliberate indifference under 42 U.S.C. §1983). More specifically as to the first claim, plaintiff contends that Bullard owed plaintiff a duty of care in the provision of medical care and treatment and that the duty was breached by separating Crowell from such care.

Under the Oklahoma Governmental Tort Claims Act, governmental employees acting within the scope of their employment are immune from suit in their individual capacity. *Lynch v. Bd. of Cty. Comm'rs* 786 Fed.Appx. 774, 788 (10th Cir.2019). Employees are within the scope of their employment for purposes of the Act when acting in good faith within the duties of office or employment or while carrying out lawfully assigned tasks. *Id. See* 51 O.S. §152(12). To state the converse, an act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith. *Pellegrino v. State ex rel. Camerson Univ.,* 63 P.3d 535, 537 (Okla.2003). When a government employee is acting outside the scope of employment, that employee is not immune from tort liability, and the government employer is not liable for that employee's actions. *Lynch,* at n.12.

Although determining whether someone was acting within the scope of their employment is typically a jury question, it is an issue for the court in cases where only one reasonable conclusion can be drawn from the facts. *See Nail v. City of Henryetta,* 911 P.2d 914, 918 (Okla.1996). In the previous order the court (while acknowledging it must view the record in the light most favorable to plaintiff and that "this seems a difficult issue") nevertheless ruled that summary judgment was appropriate. Under the present motion, the court continues to find a difficult issue presented.

Movant notes hospital policy directed that, upon a display of violence (for example) by a patient, the Charge Nurse was to contact the proper authorities. (#112-7 at page 3 of 4 in CM/ECF pagination). Moreover, an Oklahoma statute specifically decrees a felony offense if a person "without justification or excusable cause and with intent to do bodily harm, commits any assault, battery, or assault and battery upon the person of a medical care provider who is performing medical care duties." 21 O.S. §650.4(A). Therefore, the conduct as described thus far appears lawful, but this does not necessarily preclude a claim for breach of the duty of care.

The essence of plaintiff's claim is that Bullard's calling of the police set in motion events that separated Crowell from needed medical care; specifically, Crowell was removed from the hospital without the authorization of the ER physician, Dr. Hogan. There is nothing in the Oklahoma statute, however, that addresses physician authorization as a condition precedent to an arrest and removal. Any invocation of the statute by a hospital would likely result in patient removal.[1]

---

[1] Plaintiff argues for an inference that Crowell's psychiatric condition constitutes "justifiable or excusable cause" under the statute. (#126 page 10 of 32 in CM/ECF pagination). Although in the court's view this would primarily represent a defense should a prosecution ultimately take place, it might influence the officer's exercise of discretion whether to arrest the individual. Still, the court finds plaintiff's argument plausible under the statutory language.

3

On the other hand, plaintiff argues that the "liability triggering event" was not Bullard's call to the police, but rather "her subsequent decision to interfere with physician orders and mislead officers into believing Dr. Hogan authorized [Crowell's] eviction from the hospital." (#169 at 3). The officers testified that Bullard told them Dr. Hogan approved the removal. Dr. Hogan, by contrast, testified he made clear to Bullard that he did not want Crowell to leave the ER.

While a misrepresentation as to physician approval would not affect the lawfulness of the arrest, it would bear on whether defendant's conduct was within the scope of employment. Lying in this context veers toward bad faith conduct. Viewed in the light most favorable to plaintiff (as the court must regarding summary judgment) an inference is possible that defendant wished to rid herself of a patient who had been unruly and had indeed physically attacked defendant.

In sum, the court is persuaded that (as to scope of employment) there is <u>not</u> only one reasonable conclusion to be drawn from the facts. Accordingly, the issue is one for the jury. Plaintiff's state law claim against defendant is restored.[2]

As to the federal claim, this court granted summary judgment on the following basis: "To state a valid §1983 claim, the plaintiff must allege that: (1) she suffered a violation of her constitutional rights; and (2) this deprivation was caused by someone acting under the color of state law. But [plaintiff] is unable to prevail on her §1983 claim because medical malpractice, without more, is not a constitutional violation but is instead a state law claim." *Adkins v. Koduri,* 755 Fed.Appx. 751, 753 (10th Cir.2018).

---

[2]Where a negligence claim rests on a breached standard of duty that is not legally fixed with precision but remains variable – thus fluctuating with the circumstances of the case – the presence or absence of care that is the plaintiff's due tenders a controversy for jury resolution. *Jackson v. Okla. Mem. Hosp.,* 909 P.2d 765, 776 (Okla.1995).

The court noted that this was a ground not expressly raised in the motion for summary judgment. Plaintiff asks the court to reconsider based on, *inter alia*, lack of notice. As will be seen in the discussion below, the court finds this ground was arguably implicit in the nature of the plaintiff's claim and in defendant's motion. Nevertheless, the court must elaborate to address all aspects, particularly defendant's invocation of qualified immunity, which the previous order did not discuss.[3]

Where a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established. *Kapinski v. City of Albuquerque,* 964 F.3d 900, 905 (10th Cir.2020). "This is a heavy burden. If the plaintiff fails to satisfy either prong of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne,* 847 F.3d 1203, 1208 (10th Cir.2017).

Tenth Circuit authority also directs that the defense be addressed first. "If, and only if, the plaintiff meets this two-part test does a defendant bear the traditional burden of the movant for summary judgment." *Kapinski,* 964 F.3d at 905. The court may address these two inquiries in any order. *McCowan v. Morales,* 945 F.3d 1276, 1282 (10th Cir.2019). If the plaintiff fails to satisfy either test, the court must grant qualified immunity. *Id.*

---

[3]In the original response (#126) to the motion for summary judgment, plaintiff argued that defendant waived consideration of the qualified immunity defense by failing to raise it as an affirmative defense in her answer. The court disagrees. Qualified immunity may be raised at any time. *MacArthur v. San Juan Cty.,* 495 F.3d 1157, 1162 (10th Cir.2007). Plaintiff also raised the issues involved in a current academic argument about the status of qualified immunity itself. *See* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation,* 111 CAL. L. REV. 201 (2023). Of course, this court must follow Supreme Court and Tenth Circuit precedent as it presently exists.

As to the first prong, plaintiff argues that the claim arises under the Fourteenth Amendment. It is correct that the deliberate indifference standard (regarding serious medical need) applies to pretrial detainees through that Amendment. *See Lucas v. Turn Key Health Clinics, LLC,* 58 F.4th 1127, 1136 (10th Cir.2023). Although plaintiff has not established that Crowell had the status of pretrial detainee, as she had not appeared before a judicial officer, the Fourteenth Amendment also applies to a deliberate indifference claim for denial of medical care by an arrestee. *See Mcowan v. Morales,* 945 F.3d 1276, 1290 (10th Cir.2019).

The court's point, however, is that once Crowell was arrested, responsibility for medical care shifted to the police and the jail. It is not clear therefore that there is a <u>constitutional</u> claim against defendant Bullard in this circumstance.[4] Plaintiff's cited decision of *Al-Turki v. Robinson,* 762 F.3d 1188 (10th Cir.2014) involved a <u>jail</u> nurse and deliberate indifference. Until arrested, Crowell's status was that of an ordinary patient. *See. e.g., Knight v. County of Cayuga,* 2019 WL 5067901, *6 (N.D.N.Y.2019)(plaintiff is neither a prisoner nor a detainee, and may not recover under constitutional prohibitions of deliberate indifference); *Welch v. UCSD Hosp.,* 2018 WL 3032915, *3 (S.D.Cal.2018)(same).

The court elects to assume *arguendo* that a violation of a constitutional right has been articulated and move to the second prong. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing

---

[4]Plaintiff argues that to the extent Bullard claims that a constitutional right is not implicated, that argument was never raised in her Rule 56 motion. (#173 at 8). Actually it was, by dint of defendant raising the defense of qualified immunity. As the court has described, the initial burden is on plaintiff in such posture.

violates that right." *Mullenix v. Luna,* 7, 11 (2015). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right." *A.N. ex rel. Ponder v. Syling,* 928 F.3d 1191, 1197 (10th Cir.2019). The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue. *Lowe v. Raemisch,* 864 F.3d 1205, 1208 (10th Cir.2017)(emphasis and citations omitted). "[A] case directly on point" is not necessary if "existing precedent [has] placed the statutory or constitutional question beyond debate." *White v. Pauly,* 580 U.S. 73, 79 (2017). "General statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question." *Halley v. Huckaby,* 902 F.3d 1136, 1149 (10th Cir.2018). Plaintiff need not show the very act in question previously was held unlawful. *Gutierrez v. Cobos,* 841 F.3d 895, 900 (10th Cir.2016).

As might be expected from the previous discussion, the court concludes it is not clearly established law that Nurse Bullard's conduct was a constitutional violation. Plaintiff cites *Estelle v. Gamble,* 429 U.S. 97 (1976) for the proposition that intentionally delaying or denying access to medical care or intentionally interfering with the treatment once prescribed constitutes deliberate indifference. Again, *Estelle* involved treatment of a prison inmate and does not bear on the first prong of plaintiff's qualified immunity burden. Regarding the second prong, district courts have been cautioned not to define a constitutional right at a high level of generality; rather, the clearly established law must be particularized to the facts of

the case. *See Perry v. Durborow,* 892 F.3d 1116, 1123 (10th Cir.2018). The court sees no authority regarding a nurse misleading law enforcement in order to separate an ordinary patient from medical care. Plaintiff has failed in his burden as to the second prong as well.[5]

It is the order of the court that the motion for relief from judgment or order by plainitff (#169) is hereby granted in part and denied in part. The previous order (#167) is vacated in part. Velvet Bullard is restored as a party defendant as to the state law claim. The court upholds the dismissal of the federal claim as to Bullard.

**ORDERED THIS 28th DAY OF MARCH, 2024.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

---

[5] Plaintiff's citation to *Halley v. Huckaby,* 902 F.3d 1136, 1148 (10th Cir.2018) regarding "setting in motion a series of events" is likewise at too high a level of generality.