IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KYLE ENDICOTT, as Special Administrator for the Estate of Jennifer Crowell,<br><br>**Plaintiff,**<br><br>v.<br><br>CHOCTAW COUNTY CITY OF HUGO HOSPITAL AUTHORITY, et al.,<br><br>**Defendants.** | Case No. CIV-21-319-RAW |

## ORDER

Before the court is the motion of defendant Eric Hogan for summary judgment.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim. *Sanderson v. Wyoming Highway Patrol,* 976 F.3d 1164, 1173 (10th Cir.2020). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wright v. Experian Info. Sols.*, *Inc.,* 805 F.3d 1232, 1239 (10th Cir.2015).

On June 26, 2020, Decedent Jennifer Crowell was observed (possibly in seizure) on a street in Hugo, Oklahoma. She was transported by ambulance to Choctaw Memorial Hospital. Dr. Hogan was not an employee of the Hospital but rather was a privately employed emergency physician who was contracted to provide care in the Hospital's Emergency Department on June 26, 2020. He was Crowell's attending physician in the Emergency Department. He saw Crowell in her room, and also ordered IV fluids, medications, an EKG, urine testing, and blood testing. A mental health evaluation by social services was also requested. Movant asserts that Crowell "refused to cooperate" with providing blood and urine samples. Plaintiff objects to that phrase on the basis that Crowell did not have the decisional capacity to refuse.

Decedent was initially seen by Velvet Bullard, a nurse at the facility. As medical evaluation and treatment were attempted, Crowell struck Bullard. Bullard called Dr. Hogan and told him she wanted Crowell to be arrested. The police were called and Crowell was transported to jail. The hospital had not completed the blood work, "labs," and mental health assessment of Crowell at the time of transfer. Dr. Hogan was not in the Emergency Department when Crowell was removed from the Hospital.

Dr. Hogan contends he was not advised that Decedent was being arrested and removed, and that the arresting officers relied exclusively on the statements of Nurse Bullard.  At the jail, Crowell's condition declined and she was returned to the Hospital.  Ultimately, Crowell was transferred to Alliance Health Hospital in Durant.  She died on June 30, 2020.

Responding to Dr. Hogan's contention regarding his lack of knowledge, plaintiff cites the Clinical Report (#220-1).  In that document, dated June 26, 2020, and electronically signed by Dr. Hogan,  Crowell is described as having "SUICIDAL THOUGHTS (acutely psychotic) and AGITATED, AGGRESSIVE, VIOLENT BEHAVIOR and DELUSIONAL.  This started today."  Further, "[t]he patient has exhibited a behavior change.  She is non-compliant with medication.  Has not been eating or sleeping.  She has had anxiety and delusions.  Has been paranoid and had suicidal thoughts."  Finally, under Course of Care: "Pt was taken in police custody for observation at jail after punching/attacking nursing staff.  Patient is stable."

Plaintiff asserts two claims against Dr. Hogan: (1) a state law claim for negligence/medical malpractice for breach of the duty of reasonable

care, and (2) a federal claim pursuant to 42 U.S.C. §1983 for authorizing Crowell's discharge with deliberate indifference to the consequences.

Dr. Hogan moves for summary judgment as to the state law claim on the grounds that the arrest and removal of Crowell and the subsequent events at the jail were not reasonably foreseeable to him under the circumstances. Also, that the decision of the Hugo Police to transport the patient away from medical care to jail constitutes an intervening cause, breaking the causal chain. He contends further that he had no duty to interfere or intervene with the Police in their removal of Decedent. Finally, "[w]ithout qualified expert testimony to establish causation against Dr. Hogan, summary judgment in his favor is in order." (#187 at page 22 of 30 in CM/ECF pagination).

On the final point, Dr. Hogan is relying on "the general rule that plaintiffs must rely on expert testimony to establish negligence in professional liability cases[.]" *Ellis v. Grimes,* 2023 WL 4564550, *5 (N.D.Okla.2023). The *Ellis* court, however, stated that "despite" that general rule, "a court need not require expert testimony where common knowledge or experience of a layman can establish the standard of care, the breach of care, and causation with reasonable certainty." *Id.* The court cited various decisions of the Oklahoma Supreme Court and the

Oklahoma Court of Civil Appeals in support of its analysis. It should be noted that the *Ellis* court distinguished *Schultze v. United States,* 2019 WL 1526877 (N.D. Okla.2019), which involved the mental health standard for discharging a patient with suicidal ideations. *Ellis* at *7. Crowell did not commit suicide, however, and manifested other conditions.

This is a difficult issue in this case. As Dr. Pilcher, plaintiff's expert testified: "I don't think we have a cause of death even at this point." (#220-4 at page 77 of 242 in CM/ECF pagination, ll. 17-22). He disagreed with the medical examiner that listed her cause of death as seizure of unknown origin. *(Id.* at page 114 of 242, ll.13-21). The closest Dr. Pilcher came to testifying as to causation is observing that if the police had not removed Crowell from the Hospital, the outcome would have been different. *(Id.* at page 73 of 242, ll.12-15.). He elaborated that Crowell was markedly undermedicated at the Hospital and listed tests that could have been performed on her first visit. Had all that been done, "[t]hey would have realized that she was actually terribly sick and needed to stay in the hospital, not the jail." *Id.* at page 125 of 242, ll.17-25 – page 126 ll. 12. It does not appear that Dr. Pilcher was asked to elaborate any further.

Viewing the record in the light most favorable to plaintiff, the court finds that (marginally) Dr. Pilcher testified sufficiently to survive summary judgment. While he testified to lack of responsibility <u>if</u> Dr. Hogan was unaware of Crowell's removal, he also testified that if the evidence demonstrates that Dr. Hogan was told and approved of the removal, "[t[hen it would be his responsibility. He would – he would assume responsibility for the – for Jennifer being arrested and taken to jail." (#220-4 at page 104 of 242 in CM/ECF pagination, ll.1-4). Dr. Hogan's knowledge of the arrest and removal is a genuine dispute of material fact.

Alternatively, the court finds (also marginally) that under the *Ellis* court's discussion, the common knowledge and experience of the jury could find causation demonstrated. Perhaps not causation as to death, but as to a worsening condition, which indeed happened upon Crowell's arrival at the jail.

Movant also seeks summary judgment as to proximate cause generally. The court declines to do so. The existence of proximate cause is generally a question of fact for the jury to determine and becomes a question of law only if there is no evidence from which a reasonable person could find a causal nexus between the defendant's negligent acts and the plaintiff's injury. *Cherokee Nation v. McKesson Corp.,* 529

F.Supp.3d 1225, 1232 (E.D.Okla.2021)(citation omitted). Foreseeability is an essential element of proximate cause in Oklahoma, and it is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested. *Id.* (citation omitted). Whether a negligent event's injurious consequences could have been reasonably foreseen presents a jury question. Whether an intervening act is foreseeable also calls for an evaluative determination by the trier of fact. *Id.* (citation omitted). Again, accepting movant's argument requires the court to find that the police took Crowell from the Hospital "unbeknownst" to Dr. Hogan. The record is disputed on this point.

Summary judgment will, however, be granted as to plaintiff's §1983 claim. To prevail on such a claim, plaintiff must show (1) the defendant deprived the plaintiff of a constitutional right and (2) the defendant acted under color of state law. *See Johnson v. Rodrigues,* 293 F.3d 1196, 1202 (10th Cir.2002). In the court's view, plaintiff's claim fails as to both elements.

As to the first, "medical malpractice, without more, is not a constitutional violation but is instead a state law claim." *Adams v. Koduri,* 755 Fed. Appx. 751, 753 (10th Cir.2018). The Constitution requires adequate medical care for both pretrial detainees and arrestees.

*See Currie v. Chhabra,* 726 F.3d 626, 630 (7th Cir.2013). Until Crowell was arrested, however, she was neither of these. She was an ordinary patient in the Hospital. *Cf. Knight v. County of Cayuga,* 2019 WL 5067901, *6 (N.D.N.Y.2019). Her arrest placed the duty of providing medical care to the jail.

In the interest of thoroughness, the court addresses whether Dr. Hogan's conduct was "under color of law," the second element of a §1983 claim. This presents a closer question. It is undisputed that the Hospital was created as a public trust, which makes it a "state actor" for section 1983 purposes. *See Beedle v. Wilson,* 422 F.3d 1059, 1065 (10th Cir.2005). Dr. Hogan , however, was a private physician working in the Emergency Department.

The relevant standard for determining whether Dr. Hogan acted under color of state law focuses on "the relationship among the State, the physician and the prisoner." *West v. Atkins,* 487 U.S. 42, 55-56 (1988). In determining whether a doctor acted under color of state law, the primary factor is "the physician's function within the state system, not the precise terms of his employment." *Id.* at 56.

The court concludes that, in his role as an Emergency Department physician, Dr. Hogan was not exercising "any power possessed by virtue

of state law." *Id.* at 49. He was able to treat Crowell not because he was "clothed with the authority of state law," *id.,* but because of his employment contract. *Cf. Rodriguez v. Plymouth Ambulance Service,* 577 F.3d 816, 827-28 (7th Cir.2009)(emergency medical system that has undertaken to treat all patients who present as an emergency would not be a state actor if it happened to treat prisoners). Dr. Hogan "just happened to be the physician who provided treatment." *Scott v. Ambani,* 577 F.3d 642, 649 (6th Cir.2009). This element of the federal claim fails was well.

It is the order of the court that the motion for summary judgment of defendant Hogan (#187) is hereby granted in part and denied in part. Plaintiff's claim pursuant to federal law is dismissed. Plaintiff's claim pursuant to state law proceeds.

      **ORDERED THIS 31st DAY OF MARCH, 2025.**

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**