## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KYLE ENDICOTT, as Special** | ) | |
| **Administrator for the Estate of** | ) | |
| **Jennifer Crowell,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-21-319-RAW** |
| | ) | |
| **CHOCTAW COUNTY CITY OF HUGO** | ) | |
| **HOSPITAL AUTHORITY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the court is the motion of defendant Terry Park for summary judgment. Park, the Sheriff of Choctaw County, is sued only in his official capacity. Under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), a local governmental unit, such as a municipality or a county, is a "person" subject to §1983 liability, and a suit against the Sheriff in his official capacity as Sheriff is the equivalent of a suit against the county. *Cox v. Glanz,* 800 F.3d 1231, 1254 (10th Cir.2015).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper

disposition of the claim. *Sanderson v. Wyoming Highway Patrol,* 976 F.3d 1164, 1173 (10th Cir.2020). When applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wright v. Experian Info. Sols.*, *Inc.,* 805 F.3d 1232, 1239 (10th Cir.2015).

On June 26, 2020, Decedent Jennifer Crowell was observed (possibly in seizure) on a street in Hugo, Oklahoma. She was transported by ambulance to Choctaw Memorial Hospital, where she was initially seen by Velvet Bullard, a nurse at the facility. The initial records used the following language to describe Crowell: "'suicidal thoughts (acutely psychotic)', anxiety, hallucinations, delusions, 'bizarre behavior,' agitated, 'aggressive behavior,' and 'violent behavior.'" As medical evaluation and treatment were attempted, Crowell struck Bullard. The police were called and Crowell was transported to jail. The hospital had not completed the blood work, "labs," and mental health assessment of Crowell at the time of transfer.

Decedent was carried into the jail's entryway. She remained either sitting or lying in the entryway while her possible admission was discussed by jail personnel and the police. Hugo police told Jail Administrator Christie Terry-Ball that the hospital was refusing to provide

2

Decedent with further treatment. Terry-Ball refused to accept custody of the Decedent without documentation of "medical clearance." Terry-Ball contacted Sheriff Park and advised him of the situation. Park stated he was on his way.

Being advised that the hospital refused to further treat Decedent, Park instructed the officers to take Crowell into the jail and lay her down in a cell for observation, and to place her on suicide watch. Decedent's clothing was removed, in accordance with suicide watch procedure. A female detention officer noted that the Decedent seemed to have difficulty breathing, that her hand had changed in color, and that she may have been having a seizure. Choctaw County Deputy Sheriff Gibbs, who was a trained (but not licensed) emergency medical technician, entered the cell to reassess the Decedent's condition.

Gibbs found that Decedent had a weak pulse and her breathing was shallow. He requested EMS be called. When EMS arrived, Decedent had stopped breathing. She was ultimately transferred to Alliance Health in Durant, Oklahoma, where she was pronounced dead on June 30, 2020.

The right to custodial medical care is well settled. *Paugh v. Uintah County,* 47 F.3d 1139, 1153 (10th Cir.2022). A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth

3

Amendment. *Id.* Those same constitutional protections apply to pretrial detainees, such as Decedent, through the Fourteenth Amendment's Due Process Clause *Id.* at 1153-54.

Deliberate indifference entails something more than mere negligence. *Id.* at 1154. Deliberate indifference is equated to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id.*

Deliberate indifference involves both an objective and subjective component. *Olsen v. Layton Hills, Mall,* 312 F.3d 1304, 1315 (10th Cir.2002). To satisfy the objective component, a plaintiff must show the medical condition or harm claimed by the inmate was sufficiently serious to constitute a deprivation of constitutional dimension. *Strain v. Regalado,* 977 F.3d 984, 989-90 (10th Cir.2020). A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Id.* at 990.

In his reply to the present motion, plaintiff invokes Rule 56(d) F.R.Cv.P., and argues that he was unable to fully respond because of a then-pending motion for spoliation sanctions regarding deleted text messages. The court has

now ruled against the plaintiff on the issue (#276). Accordingly, the invocation of Rule 56(d) is deemed moot.

Initially, defendant argues that he "did not owe the Decedent any constitutional duty to provide her access to medical/mental health care because she was not in the custody of the Choctaw County Jail at the time of the alleged violation." (#189 at page 14 of 23 in CM/ECF pagination). This assertion is based on the decedent never being formally "booked" into the jail and custody never being formally transferred to the County. The court declines to adopt this contention. "The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on [her] own behalf." *Jackson v. Schultz,* 429 F.3d 586, 590 (6th Cir.2005). The doorway video (##189 & 190, Exhibit 17) makes plain that decedent had her personal liberty restrained upon being brought into the jail. Sheriff Park also ordered her clothing removed, consistent with his directive that she be placed on suicide watch. Decedent had no choice in submitting to the movant's authority. The court concludes she was "in custody."

Sheriff Park is sued in his official capacity, which as previously stated is essentially another way of pleading an action against Choctaw County. *See Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir.2010). The absence of a constitutional violation by the officers of a County precludes a finding of liability against the County itself. *See Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th

Cir.1993). In movant's initial brief, he appears to contest the objective prong. (#189 at page 16 of 23 in CM/ECF pagination). In his reply, however, he appears to concede this aspect. (#231 at 6). In any event, the court finds plaintiff has met his burden. Shallow breathing, a hand changing color, and a possible seizure constitute sufficient evidence.

The subjective prong requires the plaintiff to present evidence of the jail official's culpable state of mind. *Paugh,* 47 F.3d at 1156. That is, a plaintiff must present a triable issue of fact that a defendant knows of and disregards an excessive risk to the inmate's health or safety. *Id.* For this, the plaintiff must establish that a defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the defendant actually drew the inference. *Id.*

A plaintiff need not show that a jail official acted or failed to act believing that harm actually would befall an inmate. *Id.* Rather, it is enough that an official merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist. *Id.* Whether a jail official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. *Id.*

Movant asserts as follows: "However, in this case, there is simply no evidence that Defendant Park was subjectively aware that the Decedent faced

a serious risk of harm and ignored it. At the time she was placed in the cell, Sheriff Park did not believe that the Decedent was in need of any emergency medical or psychiatric treatment[;] he believed that the Decedent was on some type of drug." (#189 at page 16 of 23 in CM/ECF pagination). Plaintiff responds by noting that the jail administrator testified that she told movant that placing Crowell in the jail under the circumstances could expose Crowell to a serious risk of harm. (See #221-5 64:15-65:16).

This testimony is sufficient to create a genuine dispute of material fact as to subjective awareness, in the court's view. Also, a belief that Crowell did not need psychiatric treatment seems inconsistent with placing her on suicide watch. A jail official's delay or refusal to obtain medical care for an inmate may constitute deliberate indifference. *Paugh,* 47 F.4th at 1154. The court acknowledges the unusual facts and difficulty of the Sheriff's position: Crowell was receiving medical care – at the hospital. Based upon Crowell striking the nurse, the hospital requested Crowell be arrested, which resulted in her transfer to the jail. Still, the court denies summary judgment on the issue of an underlying constitutional violation.

When an official takes action over which he or she has final policymaking authority, the policymaker is the municipality, so it is fair to impose liability on that entity for that action. *Whitson v. Bd. of Cnty. Comm'rs of Cnty. Of Sedgwick,* 106 F.4th 1063, 1072 (10th Cir.2024). A single decision may create

7

municipal liability if that decision was made by a final policymaker responsible for that activity. *Bennett v. Pippin,* 74 F.3d 589, 586 (5th Cir.1996). A government policy or custom need not have received formal approval through the municipality's official decisionmaking channels to subject the municipality to liability. *Hunter v. Town of Mocksville,* 897 F.3d 538, 554 (4th Cir.2018). If the decisionmaker at issue does possess final authority to establish municipal policy with respect to the actions ordered, his actions may fairly be attributed as reflecting municipal policy. *Id.* at 554-55. "Under Oklahoma law, the sheriff is the final policymaker for a county jail. The sheriff . . . is responsible for medical care in Oklahoma." *Estate of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs of Cleveland Cnty.,* 237 P.3d 134, 142 (Okla.2010)(footnotes omitted); *Layton v. Bd. of Cnty. Comm'rs of Oklahoma City,* 512 Fed.Appx. 861, 871 (10th Cir.2013). *See also* 19 O.S. §513; 57 O.S. §47.

In the alternative, plaintiff also seeks to impose liability based on inadequate policies and inadequate training of personnel. Generally in this regard, a plaintiff must prove (1) official policy or custom, (2) causation, and (3) state of mind. *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs,* 962 F.3d 1204, 1239 (10th Cir.2020).

As to policy, plaintiff asserts that the Choctaw County Jail had a "sober up" policy that placed at-risk detainees into a cell for a certain period, thereby diverting them from the booking process and medical screening. Movant

concedes that the Jail "had a policy providing that inmates requiring detoxification will be placed in a holding cell and closely observed for 4 to 6 hours or until sober." (#231 at 7).

Plaintiff further asserts that despite a written policy requiring a Medical Director for the jail, there was no such person. Movant does not dispute this assertion but denies any causal link to any constitutional violation. (#231 at 7-8).

Inasmuch as movant believed Crowell was under the influence of drugs, there is an inference that she was placed in the cell in accordance with the "sober up" policy. In the absence of a Medical Director, (viewing the record in the light most favorable to plaintiff) a reasonable inference of causation and reckless state of mind on movant's part may be drawn. The court has addressed state of mind earlier in this order. As for causation, defendant contends that Crowell was continuously monitored while in the cell, but this seems an issue of fact.

Again viewing the record in the light most favorable to plaintiff, the court finds that the assertion of inadequate training survives as well. While Deputy Gibbs had some medical training, he was never licensed as an EMT. During his deposition he declined any suggestion that he was an expert medical witness. In a narrow range of circumstances, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is

a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. *S.R. v. Tri-County,* 2025 WL 845117, *6 (E.D.Okla.2025)(citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397 (1997) and *City of Canton, Ohio v. Harris,* 489 U.S. 378 (1989)).

It is the order of the court that the motion for summary judgment of defendant Park (#189) is hereby denied.

ORDERED THIS 31st DAY OF MARCH, 2025.

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**