IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

KYLE ENDICOTT, AS A SPECIAL
ADMINISTRATOR OF JENNIFER
CROWELL DECEASED,

**Plaintiff,**

v.	Case No. 21-CV-319-RAW

CHOCTAW COUNTY CITY OF HUGO
HOSPITAL AUTHORITY, ET AL,

**Defendant.**

### Order

Before the Court is the Estate's Motion to Limit or Exclude the Testimony of Dr. Beaman [Dkt. No. 200]; Plaintiff's Motion to exclude Dr. Flamik [Dkt. No. 201], Plaintiff's Motion in Limine to Exclude the Opinion of Dr. Hough [Dkt. No. 202], Estate's Motion to Limit or Exclude the Testimony of Dr. Reams [Dkt. No. 203], Daubert Motion to Exclude the Expert Testimony of Dr. Reams [Dkt. No. 215]. Plaintiff's Motion in Limine to Limit or Exclude the opinion of Dr. Sanders [Dkt. No. 204], Plaintiff's Motion to Limit or Exclude the Testimony of Dr. Vaugh [Dkt. No. 205], Motion in Limine to Limit or Exclude Expert Testimony by Velvet Bullard [Dkt. No. 207, Motion to Exclude Testimony of Expert Witness Stacy Sinner [Dkt. No. 209], Defendant Eric Hogan's Daubert Motion Regarding Plaintiff's Expert Kimberly Burtch and Accompanying Brief in Support [Dkt. No. 212], Defendant Eric Hogan's Daubert Motion Regarding Plaintiff's Expert Charles Pilcher, M.D.'s Expert Testimony and Accompanying Brief in Support [Dkt. No. 213], Defendant Eric Hogan D.O.'s Daubert Motion Regarding Plaintiff Authority's Designated Agent, Nick Rowland [Dkt. No. 216].

I.	**Standards governing admissibility of expert testimony.**

Pursuant to Rule 702 Fed. R. Evid. (as interpreted in *Daubert*) a district court must satisfy itself that the proposed expert testimony of an expert is both reliable and relevant before permitting the jury to assess such testimony. *United States* v. *Wofford*, 766 Fed. Appx. 576, 581 (10th Cir. 2019); *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993). The Rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Reliability is determined by evaluating the reasoning and methodology underlying the expert's opinion. Relevance is about whether the expert testimony will assist the trier of fact or whether it instead falls within the juror's common knowledge and experience and will usurp the juror's role of evaluating a witness's credibility. *Wofford,* 766 Fed. Appx. at 581.

The Supreme Court set forth the following non-exclusive factors a court should consider when evaluating the admissibility of proposed expert testimony: (1) can and has the theory been tested; (2) has it been peer reviewed; (3) does it have a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; (5) does it have widespread acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593. The inquiry into these factors is "a flexible one," and the focus is "on principles and methodologies, not on the conclusions that they generate." *Id*. The party seeking the admission of the expert testimony has the burden to establish it's admissibility by a preponderance of the evidence. *Id* at 592 n.10. To perform its gatekeeping role, the district court must make specific findings on the record so that the appellate court can determine if it carefully reviewed the objected-to expert testimony under

the correct standard. *Tudor* v. *Southeastern Okla. St. Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021); *See also United States* v. *Cushing*, 10 F.4th 1055, 1079 (10th Cir. 2021). However, when an expert's methodology is not complex, technical, or highly specialized, a less detailed district court ruling is sufficient. *Tudor*, 13 F.4th at 1030. (Internal citations omitted.)

   1. **Plaintiff's Motion to Exclude Dr. Beaman**

Plaintiff seeks to exclude or limit the opinions of Dr. Beaman arguing that he improperly opines on the duties of law enforcement officers and provides an unreliable opinion the decedent may have used methamphetamine. Dkt. No.200.

Plaintiff's first objection is denied. It is clear from Dr. Beaman's report that he does not offer an opinion on the duties of law enforcement officers. Instead, he provides his opinion as a board certified psychiatrist, regarding how medical professionals should manage treating a patient who is in custody. With respect to his opinions on possible signs of methamphetamine use, the motion is also denied. It appears undisputed that Dr. Beaman is qualified to render opinions on psychiatry. However the Plaintiff asserts that despite his qualifications, Dr. Beaman's methods are unreliable. Dr. Beaman explains in his report [Dkt. No. 159-3] that his opinion is based on his review of the decedent's medical history and her presenting symptoms in the ER. Based on his significant experience as a psychiatrist with training an experience treating individuals presenting to the ER, Dr. Beaman concluded that the decedent's symptoms indicated that methamphetamine use could not be ruled out. Dr. Beaman adequately explains his opinions for the purposes of Rule 702 and Daubert therefore Plaintiff's motion [Dkt. No. 200] is hereby DENIED.

   2. **Plaintiff's Motion to Exclude Dr. Flamik**

Plaintiffs specifically object to the following opinions provided by Dr. Flamik: (1) his opinions on the appropriateness of staffing Dr. Eric Hogan in the emergency room on the date of the

incident; (2) Dr. Flamik's opinion about the conduct of a nurse, Velvet Bullard, (3) Dr. Flamik's opinions regarding whether officers should have requested a "fit slip" before removing the decedent from the hospital; and (4) Dr. Flamik's "conclusory" opinion that the decedent was stable when she left the emergency room. [Dkt. No. 201].

Dr. Flamik is a board certified emergency medicine physician whose report states that he is also a medical director for Tactical Rescue Solutions, the Jacksonville Fire Department, and previously worked as a medical director for the Lonoke County Sheriff's Office Emergency Response team. Dkt. No. 158-1. According to the CV provided in his expert report Dr. Flamik has also held a number of different administrative roles within various medical institutions. *Id.* at 6. Plaintiff argues that Dr. Flamik was not qualified to opine on staffing and that his opinion on that issue is conclusory. The court disagrees. Dr. Flamik has training and experience in hiring and staffing in medical facilities and thus his opinion that it was proper to staff Dr. Hogan is within the scope of his training and expertise. Further, while the Plaintiff states that there is no rationale given for this opinion Dr. Flamik clearly states that he based his opinion on the fact that Dr. Hogan was licensed and in good standing, and that he considered the prior reported incident to be temporally remote. *Id* at 3. To the extent the Plaintiff disagrees with this conclusion, the deficiencies it has identified go more to the weight of the evidence than its admissibility. Thus, the Plaintiff's motion is DENIED pursuant to Rule 702 and *Daubert*.

With respect to the Plaintiff's second motion, the court agrees that Dr. Flamik steps outside the purview of his expertise when he characterized the decedent hitting Nurse Bullard as "felony assault" and their motion is GRANTED to the extent it seeks to exclude that conclusion. With respect to his opinion that Nurse Bullard complied with EMTALA, the Plaintiff's motion is DENIED. Experts may refer to legal standards in formulating their opinions "but may not apply

4

the law to the facts of the case or otherwise tell the jury how the case should be decided." *United States* v. *Arutunoff,* 1 F.3d 1112, 1118 (10th Cir. 1993). As an Emergency Medicine physician, Dr. Flamik is familiar with applying the requirements of EMTALA in a clinical setting. The opinions provided in his report are grounded in his expertise in emergency medicine, what standards apply to that care and whether they were followed based on the materials reviewed. Dr. Flamik's opinion regarding Nurse Bullard's actions is similarly admissible. While Dr. Flamik is not himself a nurse, his experience managing and practicing medicine in emergency rooms qualifies him to assess Nurse Bullard's actions. Additionally, his report makes clear that his opinion is based of his review of records from the incident and from the present litigation. Thus, the Plaintiff's motion with respect to this portion of his opinion is DENIED.

Plaintiff objects to Dr. Flamik's opinion that the law enforcement officers should have requested a "fit slip" or some kind of medical clearance prior to removing Ms. Crowell from the emergency room. Again, Dr. Flamik as a board certified emergency room physician is qualified to opine as to whether it is customary for police officers to obtain medical approval from a physician not a nurse before removing a patient who is in custody from the hospital. Thus, to the extent he opines that in his experience, doctors provide medical clearance before a patient is removed by police, this opinion is within the scope of his expertise and the Plaintiff's motion is DENIED. However, to the extent that Dr. Flamik opines about whether this procedure should have been police policy, the Plaintiff's motion is GRANTED as Dr. Flamik is not a police practices or legal expert.

Finally, Plaintiff argues that Dr. Flamik improperly concludes without explanation that Ms. Crowell was "stable" when she left the emergency department. Dr. Flamik's opinion regarding Ms. Crowell's medical state is based on expertise as a physician his analysis of the medical charts.

To the extent the Plaintiff's disagree with this conclusion, the deficiencies they have identified go more to the weight of the evidence than its admissibility. Thus, the Plaintiff's motion [Dkt No. 201] is DENIED in part and GRANTED in part pursuant to Rule 702 and Daubert.

**3. Plaintiff's Motion in Limine to exclude the Opinions of Dr. Hough**

Plaintiff moves to exclude the opinions of Dr. Hough [Dkt. No. 202], arguing that he offers improper legal conclusions, conclusory opinions outside the scope of his expertise, there are significant analytical gaps in his analysis, and that his opinions are based on vague and unarticulated standards. *Id*. at 2.

First, Plaintiff argues that Dr. Hough expresses legal conclusions and that his use of the term "admission" in reference to DOJ Statistics is "irrelevant and only serves to confuse the jury by suggesting the jail had no legal responsibility to Jennifer because she was not yet admitted". Dkt. No. 202 at 2-3. Plaintiff also argues that Dr. Hough should not be allowed to opine on medical conditions or societal issues. For instance, Dr. Hough opines that "life stressors are common in the general population and in correctional populations but are not equated with imminent death". Dkt. No. 161-2 at 16. Dr. Hough also opines regarding statics on "behaviors, additions, and mental and physical health conditions are spread throughout society, and arise from families, life stressors and the individual thought process of the person in any setting". *Id* at 12.

Dr. Hough is a forensic criminologist with a law enforcement background, experience conducting death investigations, researching and administering police practices and procedures, and experience creating and interpreting jail policy. Dkt. No. 161-1. Dr. Hough describes his methodology as being informed by the literature and his extensive investigative experience. He states that he reviews the materials provided, consults the criminology literature and his own expertise and forms a detailed opinion. *Id*.

First, Dr. Hough's opinion that temporary detention does not constitute a new jail admission is not an improper legal conclusion but rather his interpretation of a correctional policy. Furthermore, the court also rejects the Plaintiff's objection that Dr. Hough provides improper legal conclusions in his opinions that the actions of investigators were "reasonable" and complied with OSBI policy and that there was not a violation of the standard of care under the deliberate indifference standard. Dkt. No. 202 at 4. While testimony on ultimate legal issues is impermissible, an expert witness may refer to the law in expressing an opinion and assist the jury in understanding the facts even if that opinion is couched in legal terms. *Specht* v. *Jensen*, 853 F.2d 805, 809- 810 (10th Cir. 1988). In his report Dr. Hough references the legal standards but does not improperly define the law for the jury. Therefore, these opinions are admissible.

Additionally, Dr. Hough's opinion that the officers responded to the decedent's "deteriorating condition" in an appropriate manner, when read in the context of his report is clearly not a medical opinion, but rather an observation regarding the officer's conduct. Dkt. No. 161-1, p. 17. This topic is properly within the scope of Dr. Hough's expertise and the opinion is admissible. However, Dr. Hough's opinions regarding "life stressors" that are common within the general population and other issues regarding social issues that are prevalent "throughout society" are not relevant to this case as it is unclear how general research pertains to the actions of the correctional officers in this case. Dkt. No. 161.1 at 17.

Finally, Plaintiff argues that Dr. Hough's opinions are conclusory, and his methodology is inadequate. Dkt. No. 202 at 7. The court rejects this argument as Dr. Hough's opinions are properly based on his experience working and consulting in law enforcement and corrections. Therefore, Plaintiff's motion to exclude the opinions of Dr. Hough [Dkt. No. 202] is GRANTED in part and DENIED in part.

**4. Estate's Motion to Limit or Exclude the Testimony of Dr. Reams**

The Plaintiff's motion does not seek to exclude the entirety of Dr. Reams' testimony, but rather two portions where the Plaintiff argues that Dr. Reams improperly offers opinions on the actions of police officers and jail staff. [Dkt. No. 203]. Defendant Hogan also objects to Dr. Reams similarly arguing that he is not qualified to "give opinions as to the beliefs of non party law enforcement Hugo police". Dkt. No. 215 at 4. In response, Defendant Park argues that the objected to opinions are within Dr. Reams' area of expertise as he is merely explaining how he thinks a lay person would interpret the decedent's symptoms and that based on his assessment of her behavior in the jail, there was no reason to call EMS until 2:40 p.m.. Dkt. No. 245.

Dr. Reams is a board certified physician with 25 years of clinical experience working in emergency rooms and states that he has treated numerous patients who were in the custody of law enforcement in some capacity. Dkt. No. 160-1 at 1. Based on his qualifications and experience, the opinions Dr. Reams offers, even the portions that are objected to, are within the scope of his expertise. While Dr. Reams opines on whether he believes it was reasonable for the officers to have concerns about Ms. Crowell at various points in time, he does not opine about jail policy or practice. Instead, he bases his opinion on his assessment of her symptoms and whether it would be reasonable for the police to expect a patient to be medically cleared by a physician before leaving a hospital. Given that Dr. Reams reports significant clinical experience with patients who are in custody, this is within his scope of expertise as he knows the procedure for removing such a person from the hospital. Because his opinions are clearly within the scope of his expertise, the Plaintiff's motion [Dkt. No. 203] is DENIED. Defendant Hogan's Motion [Dkt. No. 215] is similarly DENIED. Furthermore, to the extent Defendant Bullard seeks the same relief, her motion [Dkt. No. 207] is likewise DENIED.

**5. Motion in Limine to limit or exclude opinion of Dr. Sanders**

Plaintiff objects to two of Dr. Sander's opinions which, he argues constitute improper vouching. Dkt. No. 204 at 1. "The credibility of witnesses is generally not an appropriate subject for expert testimony." *United States* v. *Toledo*, 985 F.2d 1462, 1470 (10th Cir.1993). *See United States* v. *Ganadonegro,* 805 F.Supp.2d 1188, 1213 (D.N.M.2011) (Browning, J.)(excluding expert testimony on whether defendant's confession was credible).

Dr. Sanders is a board certified Emergency Medicine physician with experience working in emergency rooms in urban and rural settings. Dr. Sanders states in pertinent part, "Due to no fault of Dr. Hogan, he was unable to complete his ordered workup for final disposition due to the patient- physician relationship when the patient was removed from the emergency department by law enforcement" Dkt. No. 159-1 at 2 ¶2. Plaintiff objects to the statement arguing that Dr. Sanders "openly vouched for the credibility of Dr. Hogan by declaring him fault free". Dkt. No. 204 at 1. In the context of Dr. Sander's analysis of the medical records and the deposition, it is appropriate for him to opine regarding particular medical decisions or procedures common to an emergency room, however stating that certain circumstances are no fault of Dr. Hogan crosses the line into improperly opining on his credibility. Thus, the Plaintiff's motion to exclude this portion of his testimony is GRANTED with regard to his opinion stating that the circumstances were no fault of Dr. Hogan but DENIED with respect to Dr. Sanders substantive medical opinions.

The Plaintiff also objects to the third paragraph of Dr. Sanders' opinion arguing that he is not qualified to testify about police practices. In pertinent part, Dr. Sanders opines that "From the perspective of an emergency physician, being advised via phone by a nurse that he or she is going to call police and have the patient arrested is not synonymous with the patient being discharged and removed… It is common to have patients in the emergency department who are in police

custody." Dkt. No. 159-1 at ¶3. Dr. Sanders clearly does not provide an opinion on police practices, but rather on what a physician working in an ER would expect the police to do before removing a patient. This opinion is within the scope of his expertise. Accordingly, the Plaintiff's motion [Dkt. No. 204] is DENIED in part and GRANTED in part.

   6. **Estate's Motion to Limit or exclude the Testimony of Dr. Vaughn**.

The Plaintiff points to two opinions provided by Dr. Vaughn that the Estate argues vouch for the credibility of a party and offer improper opinions on law enforcement that are outside the scope of the doctor's expertise. Dkt. No. 205. Specifically, the Plaintiff argues that Dr. Vaughn "openly vouched for the credibility of Dr. Hogan by siding with his testimony over that of Defendant Bullard" referring to Dr. Vaughn's statement that "I concur with Dr. Hogan's sworn testimony that he was not given the chance to complete his evaluation of this dynamic and complex situation." Dkt. No. 205 p. 1. It is proper for Dr. Vaughn to opine on his analysis of the medical records and the deposition, in this context, stating that he agrees with Dr. Hogan's analysis is not improper vouching. The substantive medical opinion is within the scope of his expertise as a neurologist. Thus, the Plaintiff's motion to exclude this portion of his testimony is DENIED in part with respect to the portion concerning the substantive medical issues.

Plaintiff's second objection to this expert's testimony is that Dr. Hogan improperly offers police practices opinions. Dkt. No. 205 at 2. The opinion states in part as follows: "It was reasonable for Dr. Hogan to expect that the police (after being contacted by nurse Bullard) would arrive to assess and stabilize the situation but not physically remove the patient from his medical care until he signed a discharge order". Dkt. No. 205 at 2. Dr. Vaughn clearly does not provide an opinion on police practices, but rather on what a physician working in an ER would expect the

police to do before removing a patient. This opinion is within the scope of his expertise. Accordingly, the Plaintiff's motion [Dkt. No. 205] is DENIED.

### 7. Motion in Limine to Limit or Exclude Expert Testimony by Velvet Bullard

Defendant Velvet Bullard raises objections to three categories of expert testimony: (1) Plaintiff's nursing expert, Kimberly Burtch, is not qualified to render emergency physician standard of care opinions; (2) Dr. Jeffery Reames, an expert endorsed by Terry Park, Sheriff of Choctaw County is not qualified to express statements of the alleged subjective beliefs of Hugo police officers; (3) the corporate representatives of the Hospital Authority are not qualified to provide medical standard of care and causation opinions as neither are medical professionals. [Dkt. No. 207].

With respect to the first two objections, Defendant Bullard simply adopts and incorporates Dr. Hogan's Daubert motions on the same subject. The court's order with regard to Defendant Bullard's first two objections are DENIED as explained *supra* and below in the rulings on Dr. Hogan's motions. Defendant Bullard's third objection is also DENIED for the reasons explained below regarding this court's decision on Defendant Hogan's Motion to exclude Mr. Rowland [Dkt. No. 217]. Therefore, the motion [Dkt. No. 207] is DENIED.

### 8. Motion To Exclude testimony of Expert Witness Stacy Sinner

Defendant Park seeks to exclude opinions offered by Stacy Sinner regarding the Sheriff, his employees, and the Choctaw County Jail. Dkt. No. 209 at 1. Specifically, Sheriff Park objects to Ms. Sinner's opinions that the handcuffing and positioning of Ms. Crowell put her at risk for positional asphyxia and that the officers ignored signs that Ms. Crowell was struggling to breath. Dot. No. 145-2, p. 13. Additionally, Sheriff Park objects to Ms. Sinner's opinions that the Sheriff "ignored the advice of his jail administrator despite asserting numerous times that he is not as

11

qualified, could not perform in the role …[and] there was no reason for officers to think that Ms. Crowell was suicidal…" *Id*. Sheriff Park further argues that Ms. Sinner's statement that stripping Ms. Crowell's clothes "deprived her of her dignity" is prejudicial and does not require expert knowledge. Finally, Sheriff Park objects to Ms. Sinners opinion that it is "incompetent" for the jail to have a policy directing officers to contact the jail's "medical director" in cases of emergency despite the fact that the Jail does not have a medical director. *Id*.

Stacy Sinner's expert report states that she has thirty (30) years of experience working in law enforcement and corrections and has held roles in the policy making and administration within law enforcement or various corrections facilities. The Plaintiff argues that Ms. Sinner's opinions are only offered in the context of correctional training topics, specifically the training associated with positional asphyxia and excited delirium. Dkt. No. 244.

For the most part, Ms. Sinner's opinions are within the scope of her expertise in the field of law enforcement and corrections training and policy. Dkt. No. 145-2 p. 2. Her first opinion that the officers were putting her holding Ms. Crowell in a position that posed a risk for positional asphyxia is not medical opinion as Defendant Park argues. Rather it is clearly an opinion regarding how officers are trained to recognize signs of positional asphyxia and managing airways. Thus, her opinions are proper and the Motion is DENIED to the extent it seeks to exclude them. Furthermore, Ms. Sinner's opinion that Sheriff Park's decision to place Ms. Crowell on suicide watch was arbitrary is also proper as it relates to correctional policy regarding assessing individuals for suicidality. However, her opinion that the officers stripped Ms. Crowell of her dignity is improper and does not offer specialized knowledge. Therefore, the Motion is GRANTED with respect to that opinion. Finally, Ms. Sinner's opinion regarding the lack of jail medical director is also proper as it is within the scope of her expertise on correctional topics. Accordingly, Defendant

Park's Motion to exclude opinions offered by Stacy Sinner regarding the Sheriff, his employees, and the Choctaw County Jail. Dkt. No. 209 is DENIED in part and GRANTED in part.

### 9. Defendant Eric Hogan, D.O.'s Daubert Motion Regarding Plaintiff's Expert, Kimberly Burtch and Accompanying Brief in Support

Defendant Hogan argues that Ms. Burtch is not qualified to "testify regarding the standard of care for an emergency department physician." [Dkt. No. 212, p. 4.] Ms. Burtch is a licensed APRN with a Doctor of Nursing Practice who has worked as a Certified Emergency Nurse, as an RN, and as a nurse practitioner in an emergency room. Dkt. No. 145-3 p. 4. Ms. Burtch's CV states that her role in the ER regularly involves Medical Screening Exams, diagnosing patients, ordering and interpreting diagnostic tests and prescribing medications. *Id*.

In response Plaintiff argues Dr. Hogan's and Ms. Burtch's qualifications overlap regarding the appropriate stabilization and assessment of patients experiencing psychiatric symptoms and that EMTALA contemplates nurse practitioners taking a similar role in patient evaluations as physicians. Therefore, Ms. Burtch as an APRN is qualified to opine regarding how the hospital staff assed Ms. Crowell's condition, including how Dr. Hogan's assessments. Dkt. No. 242 at 3. The court agrees. Rule 702's standards of qualifications are meant to be interpreted liberally. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 789 (3d Cir. 1994). Given that Ms. Burtch's opinions pertain to an area where her scope of practice overlaps with Dr. Hogan's, her opinions are properly within her area of expertise. Accordingly, Defendant Eric Hogan, D.O.'s Daubert Motion Regarding Plaintiff's Expert, Kimberly Burtch and Accompanying Brief in Support [Dkt. No. 212] is hereby DENIED. Furthermore, to the extent Defendant Bullard seeks the same relief, her motion [Dkt. No. 207] is likewise DENIED.

### 10. Defendant, Eric Hogan, D.O.'s Daubert Motion Regarding Plaintiff's Expert, Charles Pilcher, M.D.'s Expert Testimony and Accompanying Brief in Support

Defendant argues that Dr. Pilcher is not qualified to offer expert testimony in the field of emergency medicine because he has not practiced full time emergency medicine in more than ten (10) years and that the American College of Emergency Physicians states that in order to qualify as an expert under their guidelines, the physician must be "'in the active clinical practice of emergency medicine for at least three years (exclusive of training) immediately preceding the date of the occurrence giving rise to the case'." Dkt. No. 213 at 5. Defendant also argues Dr. Pilcher does not have sufficient expertise in the subject matter of the present case.

Dr. Pilcher's experience and education qualify him to offer opinions on emergency medicine. Dr. Pilcher practiced emergency medicine for decades, his medical license is still active, and while he has been retired for approximately ten (10) years from clinical practice, he has still been active in the field in the areas of publishing and consulting. Dkt. No. 145-1, p. 10. The professional standards set forth by the American College of Emergency Physicians are not by themselves dispositive when determining if an expert witness is qualified. Rule 702's standards of qualifications are meant to be interpreted liberally. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 789 (3d Cir. 1994). To the extent Dr. Hogan argues that Dr. Pilcher's ten (10) years of clinical retirement weaken his conclusions, these considerations go more to the weight of the evidence than its admissibility. Accordingly, Defendant Eric Hogan, D.O.'s Daubert Motion Regarding Plaintiff's Expert, Charles Pilcher, M.D.'s Expert Testimony and Accompanying Brief in Support [Dkt. No. 213] is hereby DENIED.

**11. Defendant Eric Hogan D.O.'s Daubert Motion Regarding Plaintiff's Authority's designated agent, Nick Rowland**

Before the Court is Defendant Eric Hogan D.O.'s Daubert Motion Regarding Plaintiff's Witness, Nick Rowland, and Accompanying Brief in Support. Dkt. No. 216. Defendant Hogan argues that the Hugo Hospital Authority's designated agent lacks adequate qualifications to opine

on medical standard of care. *Id*. Further Defendant Hogan argues that the Plaintiff asked Mr. Rowland, during his deposition about the applicable standard of care, physician compliance with hospital policy, and "the issue of the element of causation in a negligence or civil rights action." Dkt. No. 216 at 4. Dr. Hogan also objects arguing that Mr. Rowland should be excluded from providing testimony as to the "duty and responsibilities of police officers and what their beliefs should or should not be in the setting of removing a patient from the hospital." *Id*. Defendant requests that Mr. Rowland be limited to relevant matters of hospital administration.

While Defendant Hogan styles his motion as a Daubert motion, it does not appear that any party is offering Mr. Rowland as an expert. Rather, he is the designated agent for the Hospital Authority. Additionally, Defendant Hogan objects to the broad categories of questions that the Plaintiff's attorney posed to Mr. Rowland. The court cannot determine based on a description of the kinds of questions asked whether Mr. Rowland's testimony should be excluded. Accordingly, the Motion Dkt. No. 216 is DENIED without prejudice.

## **CONCLUSION**

In sum, the Estate's Motion to Limit or Exclude the Testimony of Dr. Beaman [Dkt. No. 200] is hereby DENIED; Plaintiff's Motion to exclude Dr. Flamik [Dkt. No. 201] is GRANTED in part and DENIED in part, Plaintiff's Motion in Limine to Exclude the Opinion of Dr. Hough [Dkt. No. 202] is GRANTED in part and DENIED in part, Estate's Motion to Limit or Exclude the Testimony of Dr. Reams [Dkt. No. 203] is DENIED, Daubert Motion to Exclude the Expert Testimony of Dr. Reams [Dkt. No. 215] is DENIED. Plaintiff's Motion in Limine to Limit or Exclude the opinion of Dr. Sanders [Dkt. No. 204] is DENIED in part and GRANTED in part, Plaintiff's Motion to Limit or Exclude the Testimony of Dr. Vaugh [Dkt. No. 205] DENIED, Motion in Limine to Limit or Exclude Expert Testimony by Velvet Bullard [Dkt. No. 207] is

DENIED, Motion to Exclude Testimony of Expert Witness Stacy Sinner [Dkt. No. 209] is DENIED in part and GRANTED in part, Defendant Eric Hogan's Daubert Motion Regarding Plaintiff's Expert Kimberly Burtch and accompanying Brief in Support [Dkt. No. 212] is DENIED, Defendant Eric Hogan's Daubert Motion Regarding Plaintiff's Expert Charles Pilcher, M.D.'s Expert Testimony and Accompanying Brief in Support [Dkt. No. 213] is DENIED, Defendant Eric Hogan D.O.'s Daubert Motion Regarding Plaintiff Authority's Designated Agent, Nick Rowland [Dkt. No. 216] is DENIED without prejudice.

    SO ORDERED this 27th day of May, 2025.

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**