**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1)  KYLE ENDICOTT, as Special Administrator of the Estate of JENNIFER CROWELL, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-00319-JAR |
| | ) | |
| (2)  TERRY PARK, IN HIS OFFICIAL CAPACITY as SHERIFF OF CHOCTAW COUNTY, OKLAHOMA | ) ) ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT**

---

Stephen L. Geries, OBA No. 19101
W.R. Moon Jr., OBA No. 32079
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105
Telephone:   (405) 524-2070
Facsimile:   (405) 524-2078
E-mail:    slg@czwlaw.com
      wrm@czwlaw.com

***ATTORNEYS FOR DEFENDANT
SHERIFF TERRY PARK, IN HIS
OFFICIAL CAPACITY AS SHERIFF OF
CHOCTAW COUNTY, OKLAHOMA***

March 17, 2026

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii-iv

LIST OF EXHIBITS ............................................................................................................v

BRIEF IN SUPPORT ..........................................................................................................1

ARGUMENT AND AUTHORITY ......................................................................................1

I.     THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE .........2

     A.  NO EVIDENCE POLICIES OR CUSTOMS CAUSED
         CONSTITUTIONAL VIOLATION ...................................................................2

         1.  NO EVIDENCE OF A POLICY OR CUSTOM
            WAS A CAUSAL FACTOR ...................................................................3

         2.  NO EVIDENCE OF A CUSTOM OF DELIBERATE INDIFFERENCE
            TO MEDICAL NEEDS ..........................................................................5

         3.  THE EVIDENCE DID NOT ESTABLISH A FAILURE TO TRAIN .................6

     B.  NO EVIDENCE OF DELIBERATE INDIFFERENCE BY DEFENDANT'S
         EMPLOYEES OR BY DEFENDANT HIMSELF ......................................................8

II.     EXCLUSION OF EVIDENCE OF POSSIBLE EMTALA VIOLATION ......................11

III.     EXCLUSION OF SETTLEMENT EVIDENCE ............................................................12

IV.     DENIAL OF DEFENDANT'S REQUESTED JURY INSTRUCTION
           REGARDING ISOLATED INCIDENTS ..........................................................................16

V.     THE SIZE OF THE VERDICT WAS SHOCKING, EXCESSIVE, AND
           NOT SUPPORTED BY THE EVIDENCE ...................................................................17

CONCLUSION ..................................................................................................................20

CERTIFICATE OF SERVICE.............................................................................................22

## TABLE OF AUTHORITIES

**CASES**

*Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489 (10th Cir. 1990)........................................ 9

*BNSF Ry. Co. v. Lafarge Sw., Inc.*, CIV. 06-1076 MCA/LFG, 2009 WL 9144599
 (D.N.M. Jan. 26, 2009) ........................................................................................ 14, 15

*Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997)................. 3, 17

*Christopher v. Fla.,* 449 F.3d 1360 (11th Cir. 2006)............................................................. 17, 19

*City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)........................ 6

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)........................................................ 3, 5, 17

*Commodity Futures Trading Comm'n v. Brockbank*, 316 Fed. Appx. 707 (10th Cir. 2008)........ 12

*Escue v. Northern OK College*, 450 F.3d 1146 (10th Cir. 2006) ..................................................... 2

*Farmer v. Brennan*, 511 U.S. 825 (1994) ...................................................................................... 9

*Hamilton v. Water Whole Int'l Corp.*, 302 Fed. Appx. 789 (10th Cir. 2008) .......................... 12, 13

*Haynes v. Manning*, 717 F. Supp. 730 (D. Kan. 1989).................................................................. 14

*Henning v. Union Pacific R. Co.*, 530 F.3d 1206 (10th Cir. 2008) ........................................ 12, 16

*Hinds v. Gen. Motors Corp.*, 988 F.2d 1039 (10th Cir. 1993)........................................................ 1

*Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993)........................................................... 3, 8

*Holmes v. Wack*, 464 F.2d 86 (10th Cir. 1972)............................................................................. 2

*Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999)........................................................................... 8

*Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067 (5th Cir. 1986)...................................................... 14

*Lance v. Morris*, 985 F.3d 787 (10th Cir. 2021)........................................................................... 7

*Levitant v. City of New York Human Resources Admin.,* 914 F. Supp. 2d 281
 (E.D.N.Y. 2012), *aff'd,* 558 Fed. Appx. 26........................................................................ 19, 29

*Martinez v. Caterpillar, Inc.*, 572 F.3d 1129 (10th Cir. 2009)..................................................... 16

*Mason v. Texaco, Inc.*, 948 F.2d 1546 (10th Cir. 1991) ................................................................ 17

*Mata v. Saiz,* 427 F.3d 745 (10th Cir. 2005)................................................................................... 8

*McDonough Power Equip., Inc. v. Greenwood*, 454 U.S. 548 (1984) ........................................... 1

*McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394 (10th Cir. 1990)............................... 1

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) ............................... 2, 5, 6

*Nanda v. Philips 66 Company*, 754 Fed.Appx. 675 (10th Cir. 2018)............................................. 2

*O'Hearon v. Castleview Hosp.*, 156 F.3d 1244, 1998 WL 480161 (10th Cir. 1998) ................... 12

*Orr v. City of Albuquerque*, 531 F.3d 1210 (10th Cir. 2008) ...................................................... 13

*Pembaur v. Cincinnati*, 475 U.S. 469 (1986) ................................................................................. 3

*Reichenbach v. Smith*, 528 F.2d 1072 (5th Cir. 1976)................................................................. 15

*Rivera v. Rivera*, 262 F.Supp. 2d 1217 (D.Kan. 2003)................................................................. 2

*SFF-TIR*, *LLC v. Stephenson*, 250 F. Supp. 3d 856 (N.D. Okla. 2017)....................................... 13

*Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008) ........................................................................ 8

*Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758 (10th Cir. 1997) ................................................. 13

*U.S. v. Lee-Clark*, 258 Fed.Appx. 208 (10th Cir. 2007)............................................................. 13

*U.S. v. Smith*, 13 F.3d 1421 (10th Cir. 1994)........................................................................ 16, 17

*U.S. v. Winchell*, 129 F.3d 1093 (10th Cir. 1997)....................................................................... 16

*Voda v. Medtronic Inc.*, 899 F.Supp.2d 1188 (W.D. Okla. 2012), *aff'd*,
   541 F. App'x 1003 (Fed. Cir. 2013) ........................................................................................ 2

*Waller v. City and County of Denver*, 932 F.3d 1277 (10th Cir. 2019).................................... 5, 6

*White v. Conoco, Inc.*, 710 F.2d 1442 (10th Cir. 1983)................................................................ 1

*Young v. Corr. Healthcare Companies, Inc.*, 721 F. Supp. 3d 1209 (N.D. Okla. 2024).............. 19

## FEDERAL STATUTES AND RULES

42 U.S.C. § 1983................................................................................................................................ 2

Fed. R. Civ. P. 59 ........................................................................................................................... 1

Fed. R. Civ. P. 59(a)(1)(A) ........................................................................................................... 1

Fed. R. Evid. 401 ......................................................................................................................... 13

Fed. R. Evid. 408 ......................................................................................................................... 13

Fed. R. Evid. 408(b) .................................................................................................................... 12

## LIST OF EXHIBITS – NEW TRIAL

Exhibit 1 – Excerpt from February 4, 2026 Trial Transcript

Exhibit 2 – Excerpt from February 5, 2026 Trial Transcript

Exhibit 3 – Excerpt from February 6, 2026 Trial Transcript

Exhibit 4 – Excerpt from February 3, 2026 Trial Transcript

Exhibit 5 – Excerpt from February 9, 2026 Trial Transcript

Exhibit 6 – Amended Complaint in *Young v. Corr. Healthcare Companies, Inc.*

## DEFENDANT'S MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT

Defendant Terry Park, in his official capacity as Sheriff of Choctaw County, Oklahoma ("Defendant"), respectfully moves this Court, pursuant to Fed. R. Civ. P. 59, to order a new trial on the grounds that the jury verdict was against the weight of the evidence, there were errors in denying the Defendant's proposed jury instructions, and errors in denying the admission of certain evidence regarding the existence of prior settling parties. In support thereof, Defendant submits the following Brief.

## BRIEF IN SUPPORT
## ARGUMENT AND AUTHORITY

Federal Rule of Civil Procedure 59(a)(1)(A) permits a trial court to grant a new trial on some or all of the issues raised in a motion for new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision whether or not to grant a new trial rests with the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 454 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993). The decision to grant or deny a new trial motion is committed to the trial court's "sound discretion." *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993) (citation omitted). In that regard, the district court may set aside a jury verdict only when it is convinced that the verdict is "against the weight of the evidence or when prejudicial error has entered the record." *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990). Parties seeking to set aside jury verdicts "must demonstrate trial errors which constitute prejudicial error, or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

## I.     THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

A motion for a new trial premised on the verdict being against the weight of the evidence involves reviewing facts presented at trial and is therefore left to the discretion of the trial court. *Escue v. Northern OK College*, 450 F.3d 1146, 1156-57 (10th Cir. 2006) (citing *Black v. Hieb's Enters.*, 805 F.2d 360, 363 (10th Cir. 1986)). While the Tenth Circuit has stated that the facts must be viewed in the light most favorable to the plaintiff (*see Escue*, 450 F.3d at 1156), some federal district courts within the Tenth Circuit and appellate courts in the majority of other circuits have held that a court "may weigh the evidence for itself and assess the credibility of the witnesses." *Rivera v. Rivera*, 262 F.Supp. 2d 1217, 1230 (D.Kan. 2003). *See also Voda v. Medtronic Inc.*, 899 F.Supp.2d 1188, 1193 (W.D. Okla. 2012), *aff'd*, 541 F. App'x 1003 (Fed. Cir. 2013) ("[W]hen ruling on a motion for a new trial, the court does not view the evidence in the light most favorable to either party; rather, the governing standard is whether 'the claimed error substantially and adversely affect the party's rights.'"). Regardless, a jury verdict "must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Nanda v. Philips 66 Company*, 754 Fed.Appx. 675, 679-80 (10th Cir. 2018) (quoting *M.D. Mark, Inc.*, 565 F.3d at 762). When a trial court believes the verdict is against the weight of the evidence, a new trial is proper. *Holmes v. Wack*, 464 F.2d 86, 89 (10th Cir. 1972) (citing *Community National Life Ins. Co. v. Parker Square Savings & Loan Ass'n*, 406 F.2d 603, 605 (10th Cir. 1969)). Here, the jury verdict was clearly and decidedly against the weight of the evidence.

### A.     NO EVIDENCE POLICIES OR CUSTOMS CAUSED ANY CONSTITUTIONAL VIOLATION

As Defendant was sued in his official capacity as the Sheriff of Choctaw County under 42 U.S.C. § 1983, he could only be found liable for violating the Decedent's Fourteenth Amendment rights if Plaintiff proved that there was a constitutional injury caused by Defendant's own policies or customs. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). A

2

governmental entity can only be held liable for a constitutional violation when the entity "makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 406-07 (1997). Rather, § 1983 plaintiffs must establish that a policy or custom of the defendant existed and was in force and that the policy or custom directly caused the alleged constitutional violations. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22 (1985); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Assuming, without conceding, that Decedent's Fourteenth Amendment rights were violated by one or more of Defendant's employees, the evidence *still* does not support a finding of liability against Defendant because there was no evidence that Defendant's policies, practices, or customs caused any such violation.

### 1. No evidence of a policy or custom was a causal factor

At the time relevant to this matter, the Choctaw County Jail had a policy providing that no person shall be admitted to the facility in an unconscious state or with any evidence of serious illness or injury. The policy provides that is an incoming inmate has a serious illness, injury, or emotional state, that staff should refuse to accept custody and recommend the arresting officer seek medical attention for the arrestee, and that they are not to accept custody until the arresting officer provides documentation of medical treatment. The policy further provides that, if the incoming inmate appears to be under the influence of drugs or alcohol, then staff must first determined whether the arrestee requires medical treatment before accepting custody. The policy further requires a detention officer to advise their supervisor if they observe an inmate with serious illness, injury, or emotional state. The inmate would then be sent to the hospital or a doctor's office. (Plaintiff's Trial Exhibit 15.7; Ex. 1, February 4, 2026 Trial Trans., p. 76:1 – p. 77:20; p. 78:12-

16; p. 80:17-20; p. 82:22-25; Ex. 2, February 5, 2026 Trial Trans., p. 91:8 – p. 92:19; p. 104:12-18; Ex. 3, February 6, 2026 Trial Trans., p. 23:3-17; p. 27:8 – p. 28:9). Plaintiff did not produce any evidence indicating that this policy caused any jail staff or Defendant himself to be deliberately indifferent to the Decedent's medical needs. In fact, Jail Administrator Christie Terry-Ball abided by the no medical clearance policy, and did not initially allow the Decedent to be admitted to the facility. When the arresting officers advised her to that the hospital would not take the Decedent back, she called the Defendant Sheriff to come assess the situation. (Joint Exhibit 18; Ex. 1, February 4, 2026 Trial Trans., p. 111:11 – p. 112:6; p. 112:25 – p. 113:6; Ex. 2, February 5, 2026 Trial Trans., p. 82:18 – p. 83:7; p. 89:16-24; p. 93:1-25; p. 97:3-23; p. 106:5-15; p. 109:3-11). Moreover, Plaintiff did not present any evidence indicating that the Defendant was deliberately indifferent in maintaining this policy.

Plaintiff may argue that the jail did not employ a Director of Medical Services or medical staff as contemplated by its written "Medical Services" policy. (*See* Plaintiff's Trial Exhibit 15.27; Ex. 1, February 4, 2026 Trial Trans., p. 99:17 – p. 100:2; p. 101:5-8; p. 128:1-11; p. 147:14-17; p. 160:7-12; Ex. 2, February 5, 2026 Trial Trans., p. 83:15-25; Ex. 3, February 6, 2026 Trial Trans., p. 30:7-22). However, Plaintiff did not produce any evidence indicating that this policy caused any jail staff or Defendant himself to be deliberately indifferent to the Decedent's medical needs. Regardless, violation of internal policy does not equate to or establish a constitutional violation. *See*, *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-65 (10th Cir. 2005). The jury was also instructed on that fact. (Dkt. 342, p. 58). Moreover, Plaintiff did not present any evidence indicating that the Defendant was deliberately indifferent in maintaining this policy.

At trial, Plaintiff also relied on the jail's policy which requires inmates that are suspected of being suicidal to be observed every 15 minutes or more frequently. (*See* Plaintiff's Trial Exhibit 15.15; Ex. 1, February 4, 2026 Trial Trans., p. 90:24 – p. 91:15). However, again, Plaintiff did not

4

produce any evidence indicating that this policy caused any jail staff or Defendant himself to be deliberately indifferent to the Decedent's medical needs. Additionally, this policy was clearly followed because, at all times that the Decedent was in the jail, she was under observation by one or more officers. (Ex. 1, February 4, 2026 Trial Trans., p. 116:3-9; p. 117:6-8; Ex. 3, February 6, 2026 Trial Trans., p. 28:24 – p. 30:3). Moreover, Moreover, Plaintiff did not present any evidence indicating that the Defendant was deliberately indifferent in maintaining this policy.

At trial, Plaintiff attempted to elicit evidence that the Choctaw County Jail had a routine practice of taking in intoxicated arrestees, placing them in a cell, and waiting for them to sober up before booking them into the facility. However, the Defendant Sheriff testified that there was no such routine practice. (Ex. 3, February 6, 2026 Trial Trans., p. 34:16 – p. 37:12). Moreover, Plaintiff did not produce any evidence indicating that any such practice caused any jail staff or Defendant himself to be deliberately indifferent to the Decedent's medical needs.

The evidence at trial clearly demonstrated that the policies and procedures of the jail were not a casual factor in any violation of the Decedent's constitutional rights. Consequently, under *Monell, supra,* even if the Decedent's constitutional rights *were* violated, any such violation cannot fairly have been to be proximately caused by any policy or procedure of the jail. The jury's finding in favor of Plaintiff was therefore against the weight of the evidence in this regard.

### 2.    No evidence of a custom of deliberate indifference to medical needs

Municipal liability can also be established by an informal custom so widespread and permanent that it is equivalent to an official policy. *Waller v. City and County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Evidence of a single incident is insufficient to establish a widespread custom and impose liability under *Monell. See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Even evidence of one prior incident sufficiently similar in nature to put a defendant on notice that a

problem exists is insufficient to establish a pattern of violations, even when the incident is egregious. *Waller, supra,* 832 F.3d at 1287 (citing *Coffey v. McKinley Cty.*, 504 F. App'x 715, 719 (10th Cir. 2012); *Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987)). Deliberate indifference cases in particular require proof of a pre-existing *pattern* of constitutional violations. *Id.* at 1287.

Here, assuming that Plaintiff's constitutional rights were actually violated, *no* evidence was presented of any pattern of deliberate indifference to medical care occurring prior to the Decedent's death. Because there was no evidence to support that an informal custom of deliberate indifference to medical/mental healthcare existed, the verdict is against the weight of the evidence in that regard.

### 3.      The evidence did not establish a failure to train

There are limited circumstances where inadequacy in training can be a basis for § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985). Inadequacy in training may serve as the basis for municipal liability under § 1983 "only where the failure to train amounts to deliberate indifference." *City of Canton*, 489 U.S. at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality...can a city be liable for such a failure under § 1983." *Id*. at 389. To establish deliberate indifference to a need for training, Plaintiff was required to prove Defendant both knew of and disregarded the substantial risk of inadequate training of his employees. *Id.* at 388. He was required to prove there was a policy or custom of the jail involving deficient training, that the policy or custom caused an injury, and that the policy or custom was adopted with the knowledge it could put citizens at a substantial

risk of serious harm. *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021) (citing *Waller, supra,* 932 F.3d at 1283-84). However, the evidence at trial did not prove any of these elements.

Jailers at the Choctaw County Jail received training on the jail's policies and procedures, first aid and CPR, and the Oklahoma Jail Standards. A first aid and CPR book was kept in the book-in office for reference. The jailers' first aid training included training on recognizing seizures and heart problems. It was the expectation that the first aid training would help jailers to be able to determine whether an inmate was experiencing a serious medical condition. (Ex. 2, February 5, 2026 Trial Trans., p. 103:4 – p. 104:8; p. 105:13-20; Ex. 3, February 6, 2026 Trial Trans., p. 23:18-22; p. 88:15 – p. 89:12). Lacy Hudson (f/k/a/ Lacy Mooney) testified that she had CPR training and some jailer training. She was trained to look over incoming inmates for serious injuries, illnesses, or emotional state and to contact a supervisor in such case, and that no person was to be admitted into the facility in an unconscious state or with evidence of serious illness or injury. (Ex. 1, February 4, 2026 Trial Trans., p. 73:19 – p. 75:5; p. 77:17 – p. 78:12-16; p. 80:13-16; p. 111:5-14). Moreover, Hudson was still in training at the time of the underlying incident, and she was being directly supervised by the Jail Administrator Christie Terry-Ball. (Ex. 1, February 4, 2026 Trial Trans., p. 110:6-13).

Saundra Melton testified that she had received training in the handling of mentally ill individuals, that in April 2019 she received training on first aid and CPR, that she received training on the Oklahoma Jail Standards, and on medication. (Ex. 1, February 4, 2026 Trial Trans., p. 176:3-17). Deputy Dustin Gibbs who was also present was a trained EMT. (Ex. 2, February 5, 2026 Trial Trans., p. 40:2-4; p. 79:16 – p. 80:2; p. 98:12-15). Throughout his 39 years of law enforcement experience, the Defendant Sheriff himself has received numerous hours of jailer training, including training in mental illness, supervision and management, and first and CPR. (Defendant's Trial Exhibit 42, pp. 31-36; Ex. 3, February 6, 2026 Trial Trans., p. 85:17 – p. 88:14).

Moreover, Plaintiff presented no evidence of any persistent pattern of violations of Choctaw County Jail inmates' constitutional rights to medical/mental health care which would have put Defendant Park on notice of the need for any additional or different training in that regard. Thus, Plaintiff failed cannot demonstrate that the Defendant was deliberately indifferent to any inadequacies in the training of his staff. Because the evidence overwhelmingly shows jail staff were trained and that Defendant did not have a policy of deliberate indifference to the need for additional training, the jury's verdict was against the weight of the evidence in this regard as well.

B.    NO EVIDENCE OF DELIBERATE INDIFFERENCE BY DEFENDANT'S EMPLOYEES OR BY DEFENDANT HIMSELF

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). This is so "regardless of whether the municipality's policies might have 'authorized' such harm." *Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). The threshold issue for the jury to decide in this case was whether jail staff or the Defendant himself were deliberately indifferent to the Defendant's medical needs. Plaintiff was required to establish that jail staff and/or Defendant knew of a substantial risk of harm to Ellis *and* failed to take reasonable measures to abate it. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). He had to prove by a preponderance of the evidence that jail staff and/or Defendant was aware of facts from which the inference could be drawn that the Decedent was at a substantial risk of serious harm *and* that they actually drew that inference. *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Mere negligence, even gross negligence, is insufficient to support a claim of

8

deliberate indifference under § 1983. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495 (10th Cir. 1990). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure "'reasonable safety.'" *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). "[P]rison officials who act reasonably cannot be found liable under…[42 U.S.C. § 1983]." *Id.* The jury's finding of deliberate indifference was against the weight of the evidence on this issue as well.

The evidence adduced at trial overwhelmingly established that neither jail staff nor the Defendant himself were deliberately indifferent to the Decedent's medical needs because they did not fail to take reasonable steps to abate the risk of harm to the Decedent under the totality of the circumstances known to them. When the Decedent first arrived at the facility, Jail Administrator Christie Terry-Ball abided by the no medical clearance policy, and did not initially allow the Decedent to be admitted to the facility. When the arresting officers advised her to that the hospital would not take the Decedent back, she called the Defendant Sheriff to come assess the situation. (Joint Exhibit 18; Ex. 1, February 4, 2026 Trial Trans., p. 111:11 – p. 112:6; p. 112:25 – p. 113:6; Ex. 2, February 5, 2026 Trial Trans., p. 82:18 – p. 83:7; p. 89:16-24; p. 93:1-25; p. 97:3-23; p. 106:5-15; p. 109:3-11). When the Defendant Sheriff arrived, he agreed with Terry-Ball's determination that the Decedent could not be admitted to the jail facility without a medical clearance, and he advised the arresting officers of that need several times. However, the arresting officers made it clear to the Defendant Sheriff that the hospital would not take the Decedent back. Seeing no reason to doubt them, the Defendant Sheriff decided to have the Decedent placed in cell four to get her out of the entryway of the jail, until alternative arrangements could be made to get her medically cleared. (Ex. 1, February 4, 2026 Trial Trans., p. 183:19 – p. 184:9; Ex. 2, February

9

5, 2026 Trial Trans., p. 97:3 – p. 98:1; p. 109:14-25; Ex. 3, February 6, 2026 Trial Trans., p. 38:18-23; p. 39:12 – p. 40:14; p. 42:6-11; p. 91:22 – p. 92:18; p. 93:7 – p. 95:3). The Defendant Sheriff has never before known the Choctaw Memorial Hospital to provide a medical clearance for an inmate, and has never had to send an inmate elsewhere for medical clearance. (Ex. 3, February 6, 2026 Trial Trans., p. 90:15-24).

Moreover Plaintiff did not introduce any evidence indicating that jail staff or the Defendant Sheriff himself were subjectively or constructively aware that the Decedent was in need of emergency medical assistance prior to her being placed in cell four. Saundra Melton did not observe the Decedent go limp or any part of her body turning blue while she was in the entryway of the jail. (Ex. 1, February 4, 2026 Trial Trans., p. 185:8 – p. 186:2). Lacy Hudson did not observe the Decedent turning blue, involuntarily moving, or doing anything in the foyer of the jail which led her to believe that the Decedent was going to have a medical episode once she was placed in cell four. (Ex. 1, February 4, 2026 Trial Trans., p. 125:2-10). Neither the Defendant nor jail staff were made aware that, in the hospital prior to being transported to the jail, the Decedent had been given the max dose of Haldol, that she had been given three doses of Ativan, that she had had a seizure, that she had not received any treatment at the hospital, or that none of the medical orders the doctor had ordered had been completed. (Ex. 1, February 4, 2026 Trial Trans., p. 182:4 – p. 183:18; Ex. 2, February 5, 2026 Trial Trans., p. 107:5-22; Ex. 3, February 6, 2026 Trial Trans., p. 98:16 – p. 99:17). Moreover, at all times that the Decedent was in the jail, she was under observation by one or more officers. (Ex. 1, February 4, 2026 Trial Trans., p. 116:3-9; p. 117:6-8).

Shortly after the Decedent was placed in cell four, it became apparent that the Decedent's condition was worsening and Deputy Gibbs said to call an ambulance. The Defendant Sheriff then immediately directed one of the members of the jail staff to contact the EMTs. (Ex. 3, February 6,

10

2026 Trial Trans., p. 98:1-11). All in all, the Decedent was at the jail facility for an extremely brief period of time before the EMTs were contacted. The Decedent arrived at the Choctaw County Jail at approximately 2:17 p.m., the Defendant Sheriff arrived at approximately 2:30 p.m., and EMTs was contacted at approximately 2:40 p.m. (Joint Exhibit 1; Joint Exhibit 12; Ex. 1, February 4, 2026 Trial Trans., p. 180:6 – p. 181:21).

Therefore, the jury's finding that either jail staff or the Defendant himself was deliberately indifferent to the medical needs of the Decedent is against the weight of the evidence. Consequently, a new trial is warranted for this additional reason.

## II.    EXCLUSION OF EVIDENCE OF POSSIBLE EMTALA VIOLATION

At trial, Defendant's counsel question Dr. Eric Hogan regarding whether the Decedent's release from the hospital while her condition was not stable was a potential violation of the Emergency Medical Treatment and Active Labor Act (EMTALA) and whether any complaints had been filed with the osteopathic board over his interactions with the Decedent. The Court disallowed this line of questioning, seemingly on the grounds of relevance. (Ex. 4, February 3, 2026 Trial Trans., p. 173:21 – p. 177:24). However, contrary to the Court's apparent finding in that regard, the evidence was very relevant to Dr. Hogan's culpability in the outcome of the Decedent. Moreover, the evidence was also relevant because if the Defendant believed that the Decedent had been released from the hospital in accordance with EMTALA, then he would have been operating under the assumption that the Decedent was in a stable medical condition shortly before her arrival at the jail facility. This, in turn, would bolster the Defendant's argument that he did not perceive that the Decedent was in need of emergency medical attention prior to placement in cell four and, thus, the reasonableness of his action in placing her in the cell until he could seek alternative means to get her medically cleared. Consequently, the exclusion of this evidence was

prejudicial to the Decedent and affected his substantial rights, thereby warranting the granting of a new trial. *See*, *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008).

### III.    EXCLUSION OF SETTLEMENT EVIDENCE

Prior to the trial of this matter, Plaintiff settled with Defendants Choctaw County City of Hugo Hospital Authority, Velvet Bullard, RN, and Dr. Eric Hogan and dismissed his claims against them. (Dkt. 307; Dkt. 308; Dkt. 313; Dkt. 314). Thereafter, the Court granted Plaintiff's Motion in Limine seeking to exclude evidence of such settlement, and ordered that "[a]ny reference to the settlement by any individual or entity not still a party to this action will not be permitted at trial." (Dkt. 328, p. 5). However, in excluding evidence of the existence of the settlement of these former party defendants, the Court abused its discretion and unduly prejudiced the Defendant.

While Rule 408 of the Federal Rules of Evidence prohibits the admission of settlement evidence for purposes of proving or disproving a claim's validity or amount, "[t]he plain text of Rule 408 permits evidence of a settlement to be admitted for purposes other than to prove the validity or amount of a claim." *O'Hearon v. Castleview Hosp.*, 156 F.3d 1244, 1998 WL 480161, at *2 (10th Cir. 1998); *see also Hamilton v. Water Whole Int'l Corp.*, 302 Fed. Appx. 789, 795 (10th Cir. 2008) ("While settlements may not be introduced to prove liability, evidence of such settlements is admissible under Rule 408 for other purposes."). Admitting settlement evidence is within the trial court's discretion. *Commodity Futures Trading Comm'n v. Brockbank*, 316 Fed. Appx. 707, 714 (10th Cir. 2008) ("We review a trial court's decision to exclude evidence of settlement efforts for an abuse of discretion.").

Examples of such admissible "other purposes" include proving "a witness's bias or prejudice" or "negating a contention of undue delay." Fed. R. Evid. 408(b). Settlement evidence may also be admitted to show a party's intent, control, course of reckless conduct, lack of mistake

12

or fault, or that a party acted in bad faith. *See Hamilton*, 302 Fed. Appx. at 796 (citing *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1363-4 (10th Cir. 1987)); *see also Orr v. City of Albuquerque*, 531 F.3d 1210, 1219 (10th Cir. 2008) (settlement evidence may be admitted to show "absence of mistake"); *see also Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) (settlement evidence admissible to show party was not at fault and opposing party "acted in bad faith."). And, "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from one being litigated," although "admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlies Rule 408." *Towerridge, Inc.*, 111 F.3d at 770.

Where settlement evidence is "offered for a purpose not barred by [Rule 408], its admissibility [still] remains governed by the general principles of [the remaining Federal Rules of Evidence]." Fed. R. Evid. 408, advisory committee note to 2011 amendment. To that end, relevance is, of course, the threshold issue in determining admissibility. *SFF-TIR*, *LLC v. Stephenson*, 250 F. Supp. 3d 856, 1006 (N.D. Okla. 2017). Evidence is relevant if "'it has any tendency to make' a 'fact . . . of consequence in determining the action' 'more or less probable than it would be without the evidence.'" *Burke v. Regalado*, 935 F.3d 960, 1018 (10th Cir. 2019) (quoting Fed. R. Evid. 401). A fact is "of consequence when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict." *U.S. v. Lee-Clark*, 258 Fed.Appx. 208, 213 (10th Cir. 2007) (quoting *U.S. v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1990) *disapproved of on other grounds in Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999)).

Here, the Defendant intended to introduce the fact of Plaintiff's settlement with the Defendant's previous codefendants for the limited purpose of preventing jury confusion and speculation, and if necessary, to show the (previous) codefendant-witnesses' bias. Specifically,

13

because of the facts of this case and standards of liability, mention of the Defendant's former codefendants at trial was unavoidable. Of course, the fact that these former codefendants were no longer litigants in the matter, created the very real danger that the jury would be confused as to their absence as parties at trial and left to speculate about the reasons for their absence. In such instances, "[w]here the absence of defendants previously in court might confuse the jury, the district court may, in its discretion, inform the jury of the settlement in order to avoid confusion." *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1070 (5th Cir. 1986) (admitting the fact of settlement in products liability suit where codefendants settled after jury selection but before trial was permissible under Rule 408). Indeed, "[w]ithout evidence of why the [former defendants] were not litigants, the jury would be confused and left to speculate." *Haynes v. Manning*, 717 F. Supp. 730, 733 (D. Kan. 1989), (*aff'd in part, rev'd in part on other grounds in Haynes v. Manning*, 917 F.2d 450 (10th Cir. 1990) (noting plaintiff's arguments that "the district court erred in permitting introduction of evidence of their settlement with, and allegations in their complaint against, former defendants . . . are without merit")). Rule 408 does not prohibit admitting evidence of settlement between plaintiffs and former codefendants '"to explain another dispute and to assist the trier of fact in understanding the case'" since it is not being admitted "to prove liability or invalidity of plaintiffs' claims." *Haynes*, 717 F. Supp. at 733 (quoting *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1152 (7th Cir. 1983)).

Additionally, as mentioned above, because these former codefendants were integral aspects of this case and they (or their past/current employees) were listed as witnesses for trial, that they settled with Plaintiff would be highly likely to may make them biased and/or uncooperative on the stand. In such instances, "[e]vidence relating to a settlement is admissible to show that the parties are in a non-adverse relationship to the extent it tends to make their respective positions less credible." *BNSF Ry. Co. v. Lafarge Sw., Inc.*, CIV. 06-1076 MCA/LFG, 2009 WL 9144599, at *3

14

(D.N.M. Jan. 26, 2009) (citing *Brocklesby v. United States,* 767 F.2d 1288, 1292–93 & n. 2, n. 3 (9th Cir. 1985) and *Shaw v. Mast Adver. & Publ'g,* Inc., 715 F.Supp. 1503, 1505 (D.Kan.1989)). Thus, "'Rule 408 is inapplicable [since the] compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim.'" *BNSF Ry. Co.*, 2009 WL 9144599, at *3 (quoting Fed. R. Evid. 408 advisory committee's note). Moreover, proving "a witness's bias or prejudice" is an expressly listed in Rule 408 as a permitted purpose to admit settlement evidence. Fed. R. Evid. 408(b). When considering admitting settlement evidence to show bias, "the trial court must balance the policy of encouraging settlements with the need for evaluating the credibility of the witnesses." *Reichenbach v. Smith*, 528 F.2d 1072, 1075 (5th Cir. 1976); *see also BNSF Ry. Co.*, 2009 WL 9144599, at *3.

Indeed, this risk if bias played out in real time at trial with regard to the testimony of Dr. Hogan. In that regard, Dr. Hogan testified that he had had a change of opinion regarding the cause of the Decedent's cardiac arrest, which he had after reviewing jail video with his attorney. (Ex. 4, February 3, 2026 Trial Trans., p. 184:10 – p. 189:3). Although the Court shut down that line of inquiry and Dr. Hogan did not reveal his changed opinion, his testimony was highly suggestive that he was attempting to place the fault for the Decedent's cardiac arrest upon the Defendant. Considering his settlement with Plaintiff, this was, of course, incredibly relevant to both Dr. Hogan's credibility and bias. The introduction of evidence regarding the settlement of Plaintiff's claims against Dr. Hogan would have placed the jurors in a position to properly evaluate such testimony for credibility and bias. Considering the potential prejudice to the Defendant faced in such circumstances, "[t]he importance of informing the jurors fully so that they can carefully judge the credibility of each witness in making their fact determination . . . [then] outweighs the desire to encourage settlements." *Reichenbach*, 528 F.2d at 1075; *see also BNSF Ry. Co.*, 2009 WL 9144599, at *3. The Court's decision to prohibit admission of settlement evidence was prejudicial

15

to the Defendant and affected his substantial rights. Consequently, the Defendant should be granted new trial. *Henning*, *supra*.

## IV.    DENIAL OF DEFENDANT'S REQUESTED JURY INSTRUCTION REGARDING ISOLATED INCIDENTS

As a whole, the jury instructions in this case did not provide the jury a clear understanding of the issues and the applicable legal standards they were to apply when determining liability. *See Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009). When ruling on a challenge to jury instructions courts must determine whether the jury was misled by the instructions, taken together as a whole, and whether the instructions as a whole gave the jury an "intelligent, meaningful understanding of the applicable issues and standards." *U.S. v. Winchell*, 129 F.3d 1093, 1096 (10th Cir. 1997). *See also U.S. v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994) (citing *U.S. v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993)). "'Failure to properly instruct the jury requires a new trial 'if the jury might have based its verdict on the erroneously given instruction.'" *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1221 (10th Cir. 2008) (quoting *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002)). A new trial may also be granted when there is "substantial doubt that the jury was fairly guided." *Smith*, 13 F.3d at 1424 (quoting *Mullins*, 4 F.3d at 900)).

Here, prior to trial, the Defendant submitted a proposed jury instruction regarding the existence of a single isolated incident being insufficient to establish that an unconstitutional policy or custom existed at the Choctaw County Jail. The proposed instruction read as follows:

> Proof of a single isolated incident of an alleged constitutional violation is not sufficient to establish that an unconstitutional policy or custom existed at the Choctaw County Jail. If you find that there was a constitutional violation in this case, but that it was a single, isolated incident, you must find that Plaintiff has not proven the existence of an unconstitutional policy or custom at the Choctaw County Jail.

16

(Dkt. 315, p. 47). This proposed instruction was an accurate statement of the law. *See*, *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). However, despite the Plaintiff failing to submit any evidence of any prior pattern of similar constitutional violations regarding the provision of inmate medical/mental health care, the Court declined to give this instruction, and Defendant's counsel objected to this omission at trial. (Dkt. 342; Ex. 5, February 9, 2026 Trial Trans., p. 71:20-24).

In light of the lack of any evidence of a prior pattern of similar constitutional violations regarding the provision of inmate medical/mental health care, it was error for the Court to omit this proposed instruction. The omission of this proposed instruction, means that the instructions *as a whole* did not provide the jury a clear, meaningful understanding of the law and the jury might have based its verdict on the erroneous grounds. Because the jury was left without a meaningful explanation of the applicable law and there is doubt the jury was fairly guided, a new trial is warranted. *See*, *Smith*, *supra*., 13 F.3d at 1424.

## V.  THE SIZE OF THE VERDICT WAS SHOCKING, EXCESSIVE, AND NOT SUPPORTED BY THE EVIDENCE

"[M]ere excessiveness in the amount of an award may be cured by a remittitur, whereas excessiveness which results from jury passion and prejudice may not be so cured. In that case, a new trial is required." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1561 (10th Cir. 1991). Where an award is grossly excessive and not supported by the evidence, and it appears that the jury was swayed by passion and prejudice, then a new trial on the issue of damages should be granted. *See*, *Christopher v. Fla.*, 449 F.3d 1360, 1368 (11th Cir. 2006) ("[A] grossly excessive award may warrant a finding that the jury's verdict was swayed by passion and prejudice ... thus necessitating a new trial") (internal citations and quotations omitted).

In *Christopher*, the plaintiff was alone in his room when he alleged that two masked police officers dressed entirely in black came into his room with guns, pushed him off the bed, placed a

knee in his back, and hit him in the back of the head with a hard object, causing a blood vessel in his brain to rupture. 449 F.3d at 1363. As a result, plaintiff underwent brain surgery, spent three weeks in the hospital, and was permanently disabled. *Id.* at 1363-64. At trial, the jury awarded $4 million in non-economic damages, $225,000 in past medical expenses, and $2.5 million for future medical expenses. *Id.* at 1368.

The district court held that the damages award was "[m]anifestly excessive and swayed by passion" and ordered a new trial. *Id.* The award for future medical expenses was 40% higher than the number testified to by plaintiff's medical expert, and the evidence showed plaintiff had only paid $116,887 in past medical expenses. *Id.* The 11th Circuit agreed, explaining, "the gross excessiveness of these awards casts doubt on the validity of the entire verdict, including liability and the $4 million in non-economic damages." *Id.*

In this case, insufficient evidence was presented to support the jury's verdict of $9,544,375.00 in compensatory damages. Plaintiff presented absolutely no expert testimony to support his compensatory damages. No medical bills were submitted to show any medical incurred on behalf of the Decedent, no bills for funeral or burial expenses were submitted, and no experts testified as to the Decedent's loss of quality of life, remaining longevity, or experienced pain and suffering. Thus, there is absolutely no evidentiary justification for an award of $9.5 million in compensatory damages.

Likewise, two recent cases from the Northern District of Oklahoma indicate how grossly out of proportion and excessive the compensatory damages award is in this case. In *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019), the Tenth Circuit held that a $10-million-dollar award was large but not shocking given that evidence was presented at trial that the decedent's injury and paralysis were left untreated for five days, he was unattended for days at a time, he was unable to eat or drink, jail staff dragged him from one cell to another, and that he was naked when he

18

suffocated to death on the jail floor. *Burke, supra,* 935 F.3d at 1033. Most recently, in *Young v. Corr. Healthcare Companies, Inc.*, 721 F. Supp. 3d 1209, 1217 (N.D. Okla. 2024), appeal dismissed, No. 24-5033, 2025 WL 752336 (10th Cir. Mar. 10, 2025), the jury awarded $14 million in compensatory damages (compared with a punitive damages award of $68 million) following the death of a woman at the Tulsa County Jail. There, the plaintiff alleged the decedent, who had a prior history of heart problems, did not receive adequate medical care over a period of four months and complained about nausea, vomiting, back, and stomach pain the morning she died. (Ex. 6, Amended Complaint in *Young*).

While each of those cases involved evidence that the decedents were denied access to medical care for multiple days, the evidence in *this* case showed that any denial of medical care (and any resulting pain and suffering) happened over a matter of mere minutes. The Decedent arrived at the Choctaw County Jail at approximately 2:17 p.m., the Defendant Sheriff arrived at approximately 2:30 p.m., and EMTs was contacted at approximately 2:40 p.m. (Joint Exhibit 1; Joint Exhibit 12; Ex. 1, February 4, 2026 Trial Trans., p. 180:6 – p. 181:21). As a result, any deliberate indifference to the Decedent's medical needs did not stretch on for a week or even five days as was the case in *Young* or *Burke*. Awarding compensatory damages in this case of $9.5 million when $10 million was awarded in *Burke* and $14 million was awarded in *Young* is a strong indication that the jury was improperly swayed by passion and prejudice.

Similar to *Christopher, supra.*, the gross excessiveness of the jury's award of compensatory damages, considering the complete lack of evidence justifying such a high award, casts doubt on the entire award. It thus appears the jury was influenced by passion and prejudice. Further contributing to the likelihood of prejudice, Plaintiff's counsel requested $18 million in damages from the jury, even though there was insufficient evidence justifying such a large award. *See, Levitant v. City of New York Human Resources Admin.,* 914 F. Supp. 2d 281, 311 (E.D.N.Y.

19

2012), *aff'd,* 558 Fed. Appx. 26 (2d Cir. 2014) (granting motion for new trial based on counsel's improper conduct, including telling "[t]he jury to award $1 million in compensatory damages when such an award clearly was not supported by the evidence and he did not explain the grounds for such a large award"). Requesting such a large award, when there was absolutely no evidence to support $18 million in compensatory damages, was improper and highly prejudicial to the Defendant. Indeed, during Plaintiff's counsel's closing statements, one of Plaintiff's witnesses could be heard audibly crying from the back of the courtroom. The Defendant's counsel objected to this inappropriate display of emotion, but the Court did not instruct the jury to disregard the outburst or take any other curative measures. (Ex. 5, February 9, 2026 Trial Trans., p. 137:12 – p. 138:9). This occurred immediately prior to Plaintiff's counsel requesting the jury to return a verdict of $18 million the Estate's favor. (Ex. 5, February 9, 2026 Trial Trans., p. 139:1-2). Thus, it is highly likely that the jury was improperly moved by passion and prejudice with regard to the size of the award, justifying a new trial, or at the very minimum, a remittitur.

**CONCLUSION**

A new trial is warranted for several reasons. First, it is clear that the jury's verdict was against the weight of the evidence. The evidence demonstrated that the Decedent's Fourteenth Amendment rights were not violated by jail staff or by Defendant himself. The evidence demonstrated that both the jail staff and Defendant himself acted in reasonable response to the Decedent's medical needs, and were not subjectively or constructively aware that she was in need of emergency medical assistance prior to her being placed in cell four. Moreover, even if testimony did actually support that *jail staff* were deliberately indifferent to the Decedent's medical needs, the evidence did not establish that jail policies and procedures caused any deliberate indifference or that any such violation was caused by any deliberately indifferent deficiencies in training. The evidence at trial simply did not support a jury verdict in Plaintiff's favor. Second, the Court

20

excluded settlement evidence and evidence of a possible violation of EMTALA by the hospital or its staff, and the exclusion of such evidence was prejudicial to the Defendant and affected his substantial rights. Additionally, the Court declined to give the Defendant proposed jury instruction regarding the existence of a single isolated incident being insufficient to establish that an unconstitutional policy or custom existed at the Choctaw County Jail, despite the lack of any evidence of a prior pattern of similar constitutional violations regarding the provision of inmate medical/mental health care. This omission meant that the instructions as a whole did not provide the jury a clear, meaningful understanding of the law and the jury might have based its verdict on the erroneous grounds. Finally, the jury's the amount of the jury's compensatory damages award against the Defendant award was shocking, excessive, not supported by the evidence, and was awarded under circumstances which highly suggest the jury was improperly swayed by passion and prejudice. Each of things demonstrates Defendant should be granted a new trial in this matter.

WHEREFORE, premises considered, Defendant Terry Park, in his official capacity as Sheriff of Choctaw County, Oklahoma, respectfully requests this Court GRANT his Motion for a New Trial.

Respectfully submitted,

s/ W.R. Moon Jr.
Stephen L. Geries, OBA No. 19101
W.R. Moon Jr., OBA No. 32079
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105
Telephone:   (405) 524-2070
Facsimile:   (405) 524-2078
E-mail:       slg@czwlaw.com
              wrm@czwlaw.com

***ATTORNEYS FOR DEFENDANT
SHERIFF TERRY PARK, IN HIS
OFFICIAL CAPACITY AS SHERIFF OF
CHOCTAW COUNTY, OKLAHOMA***

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Steven J. Terrill
J. Spencer Bryan
Bryan & Terrill Law, PLLC
2500 S. Broadway, Suite 122
Edmond, OK 73013
***Attorneys for Plaintiff***

s/ W.R. Moon Jr.
W.R. Moon Jr.

22